UNITED STATES of America ex rel. Lee Royal FISHER # 46690, Appellant,

v.

Thomas DRIBER, Acting Principal Keeper, Trenton State Prison.

No. 76–1264.

United States Court of Appeals, Third Circuit.

Argued Oct. 22, 1976.

Decided Dec. 13, 1976.

Steven H. Gifis, Princeton, N.J., for appellant; Martin C. Aronchick, Henry G. Klein, law students, Newark, N.J., on brief.

Joseph C. Woodcock, Jr., Bergen County Prosecutor, Hackensack, N.J., for appellee; James Mayer, Asst. Prosecutor, of counsel and on brief.

Before ALDISERT and GIBBONS, Circuit Judges, and McGLYNN, District Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The central question for decision is whether one who makes a timely and non-frivolous motion to suppress in-court identification testimony at a state criminal trial on the ground that it has been tainted by improper pre-trial identification procedures is entitled to have the motion heard and determined by the trial court outside the presence of the jury. After considering a habeas corpus petition which was based on the theory that impermissibly suggestive identification testimony was admitted at a state trial, the district court denied the petition. The relator has appealed. We reverse the judgment of the district court and remand these proceedings.

### I.

On February 27, 1968, an armed robbery occurred at the Louis Wides Company, a real estate and insurance agency in Englewood, New Jersey. Helen Westervelt, secretary and office manager of the company, was an eyewitness to the incident. Appellant was accused of the crime and was brought to trial. At trial, the state prosecutor called Mrs. Westervelt as a witness to provide in-court identification of the accused. When the state prosecutor asked her to make the in-court identification, defense counsel immediately requested a voir dire examination of Mrs. Westervelt before she would be permitted to continue. The trial judge denied the motion.

Mrs. Westervelt subsequently identified appellant as the robber. She testified that she had watched the robber throughout the 15 minutes in which he took money from her pocketbook and from a cash box in an open safe drawer. She described him as wearing a blue woolen "navy helmet" which covered the sides of his face to the middle of his cheeks, as well as his chin. Although she indicated that the robber's eyes, nose, mouth, and part of his cheeks were visible, Mrs. Westervelt testified that the "helmet" prevented her from seeing whether the robber had a mustache.

During cross-examination, Mrs. Westervelt confirmed that she had testified before the grand jury that the robber wore a blue knitted glove on his left hand and held a gun in his right hand. She also revealed, in her exchange with defense counsel, that she had been shown a copy of appellant's photograph, which apparently was attached to the prosecutor's file, just moments prior to testifying.

Appellant was convicted and sentenced by the County Court of Bergen County, New Jersey. His conviction was affirmed by the Appellate Division of the New Jersey Superior Court, and the New Jersey Supreme Court denied certification on July 1, 1970. State v. Fisher, 56 N.J. 477, 267 A.2d 59 (1970).

On July 21, 1972, appellant filed a habeas corpus petition in federal district court. An evidentiary hearing was subsequently ordered. Because Mrs. Westervelt was unable to appear at the scheduled hearing due to illness, the district court permitted a deposition de bene esse to be taken at her home on December 21, 1972. In a Letter Opinion and Order dated January 22, 1975, the district court denied the habeas corpus petition, concluding that neither an impermissibly suggestive identification procedure

---

* Joseph F. McGlynn, Jr., of the Eastern District of Pennsylvania, sitting by designation.

nor a substantial likelihood of misidentification had tainted the challenged Westervelt testimony.

## II.

Our analysis begins with the Supreme Court's pronouncements on tainted in-court identifications. The dangers inherent in the eyewitness identification of a criminal suspect were noted by the Supreme Court in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). There, the Court sketched the parameters of the problem:

> The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. . . . A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. . . Suggestion can be created intentionally or unintentionally in many subtle ways. And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest.

*Id.* at 228–29, 87 S.Ct. at 1933 (footnotes omitted).

In *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the Court applied these observations to a state prosecution, finding it error of constitutional dimension to admit challenged in-court identifications without first determining that they were not tainted. And in 1968, the Court in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), further molded the contours of this body of law by directing that "convictions based on eyewitness identification at trial following a pretrial identification by photo-

graph will be set aside . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 384, 88 S.Ct. at 971.

Relying upon the *Wade/Gilbert/Simmons* trilogy, appellant contends that he is entitled to a new trial, free of the tainted Westervelt identification testimony. He argues that the federal habeas court should have found impermissible suggestiveness as a matter of law due to Mrs. Westervelt's examination of the photograph just moments prior to testifying.

The state challenges this argument by asserting that, after a review of the 1968 Westervelt trial testimony and her deposition taken at the federal habeas corpus proceeding in 1972, the district court could properly find that the pre-trial examination of the photograph was not impermissibly suggestive.[1] Moreover, under this view, even if the photo viewing was improper, the reception of Mrs. Westervelt's testimony could be sustained if it were established by "clear and convincing evidence" that it stemmed from her view of appellant at the time the crime was committed and not from the tainted identification procedure. *United States v. Wade, supra,* 388 U.S. at 240, 87 S.Ct. 1926, and *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), are cited as support for the latter proposition.

These arguments prove too much. Both appellant and the state fail to perceive the limited role of the federal habeas corpus court under circumstances in which, as here, the appellant's major habeas corpus contention is that he was denied a hearing prior to reception of challenged identification testimony at a state criminal trial. The parties to this appeal have bypassed a threshold procedural question: whether it is for the federal or state court, in the first instance, to make the *Wade/Gilbert/Simmons* deter-

---

1. The state challenges appellant's basic factual premise that Mrs. Westervelt was shown a photograph of appellant just prior to testifying. The challenge relies upon representations made by Mrs. Westervelt to the opposite effect during her 1972 deposition *de bene esse.* In light of the view we set out below on the role of the federal habeas court in situations of this type, as well as our review of the 1968 trial testimony, *see* Section IV *infra,* it is unnecessary to pass upon the contention.

minations when a state conviction is collaterally attacked. The resolution of this question is central to the proper disposition of this appeal.

### III.

This court cannot satisfactorily review the state trial testimony on suggestiveness, for it was not received in the context of procedures mandated by *Gilbert v. California, supra,* and *Jackson v. Denno,* 378 U.S. 368, 392–93, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). We follow the mandate of the *Jackson* Court in determining that *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1962), requires an evidentiary hearing at the state level to determine the factual complex in which the challenged identification was made.

Here, as in *Jackson,* the allegation is made that the state trial did not comport with constitutional standards. It is contended that it was error for Mrs. Westervelt's testimony to be adduced in the presence of a jury as part of its guilt determination process. The conceptual basis of a *Jackson* hearing is to permit a defendant to explore his legal contentions without the constraints imposed by the presence of a jury. The state procedures here did not satisfy the salutary rule announced in *Clemons v. United States,* 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968), *cert. denied,* 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969), and *United States v. Allison,* 414 F.2d 407 (9th Cir.), *cert. denied,* 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1969). Judge McGowan set forth the test for the District of Columbia Circuit in *Clemons:*

> Where the prosecution intends to offer only an in-court identification, the defense may challenge its admissibility. The court should then, on facts elicited outside the presence of the jury, rule upon whether a pre-trial identification by the same eyewitness is violative of due process.

408 F.2d at 1237.

A similar test was formulated for the Ninth Circuit by Judge (now Chief Judge) Browning in *Allison:*

> [W]here a timely and sufficient motion is made to suppress identification testimony on the ground that it has been tainted by pretrial photographic identification procedures, it must be heard and determined by the court outside the jury's presence in the same manner as any other motion to suppress evidence alleged to be inadmissible because unlawfully obtained.

414 F.2d at 410. *Accord, United States v. Mitchell,* 540 F.2d 1163 (3d Cir. 1976). *See also United States ex rel. Phipps v. Follette,* 428 F.2d 912, 913 n. 1 (2d Cir.), *cert. denied,* 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970); *United States v. Cranson,* 453 F.2d 123, 125–26 (4th Cir. 1971), *cert. denied,* 406 U.S. 909, 92 S.Ct. 1607, 31 L.Ed.2d 821 (1972); *United States v. Sutherland,* 428 F.2d 1152, 1155 (5th Cir. 1970), *cert. denied,* 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972); *United States v. Broadhead,* 413 F.2d 1351, 1359 (7th Cir. 1969), *cert. denied,* 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508 (1970); *Haskins v. United States,* 433 F.2d 836, 838–39 (10th Cir. 1970). *Cf. United States v. Ranciglio,* 429 F.2d 228, 230 (8th Cir.), *cert. denied,* 400 U.S. 959, 91 S.Ct. 358, 27 L.Ed.2d 268 (1970).

The 1972 deposition of Mrs. Westervelt at the federal habeas proceeding does not, in our view, cure the defect in the state proceeding. The district court based its conclusions on *both* the state trial transcript and the subsequent deposition *de bene esse.* After examining these two transcripts, it concluded that it was demonstrated "by clear and convincing evidence that there was neither an impermissibly suggestive identification procedure . . . nor, was there a substantial likelihood of misidentification." Without having the opportunity to view the demeanor of the solitary identification witness, the district court found "that Mrs. Westervelt's identification of petitioner was eminently reliable." This was not a case, then, in which a federal habeas judicial officer heard a witness' testimony and based his credibility conclusions solely on the evidentiary hearing before him. Rather, the decision was based on a review

of two transcripts, one of which was, as we later demonstrate, constitutionally infirm.[2]

■ Although the federal habeas courts should view as suspect any trial record that has not respected the rule enunciated in *Clemons* and *Allison, supra,* the remedy is not to order an evidentiary hearing in the federal system, as was done by the district court here. Rather, the inquiry should be whether the relator's request for a hearing at the state trial was or was not frivolous. If nonfrivolous, the district court is obliged to grant the writ conditioned upon the *state* affording the relator a proper hearing. It will be the state court at the state hearing that will first determine whether the pretrial identification was impermissibly suggestive and, if so, whether the identification testimony was nevertheless admissible under *Simmons* and *Biggers, supra.*

The case at bar well illustrates the importance of our adherence to the above-stated tenets when a state conviction is collaterally attacked in the federal system. We follow the *Jackson* Court when we find that both appellant and the state are entitled to have the questions of impermissible suggestiveness and admissibility of the Westervelt testimony under *Simmons* and *Biggers* determined "in accordance with valid state procedures; the State is also entitled to make this determination before [the Supreme Court] considers the case on direct review or a petition for habeas corpus is filed in a Federal District Court." *Jackson, supra,* 378 U.S. at 393, 84 S.Ct. at 1789. Under this procedure, considerations of comity and federalism, emphasized in *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149, 96 S.Ct. at 1711 (1976), will be vindicated: "Those considerations require that  .  .  .  'the National

Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.'" *Id.* at 541, *quoting Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

We emphasize that a state *trial* court is not bound to grant a request for a preliminary inquiry as a matter of course, the determination being whether the request was or was not frivolous under the circumstances. In *United States v. McKenzie,* 414 F.2d 808 (3d Cir. 1969), *cert. denied,* 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1970), we rejected a suggestion that a hearing was mandated upon request during a criminal trial in the federal district court: "We are not prepared here to adopt the inflexible rule urged by appellant, for we think that the choice between preliminary inquiry and cross-examination as the method to permit challenging the identification procedures should be determined by the district court under the circumstances of the individual case." *Id.* at 810.

### IV.

■ What remains, then, is to determine whether appellant's motion was frivolous. If it were, the federal habeas court could rule as a matter of law that appellant was not entitled to a *Jackson* hearing.

The trial record discloses that appellant's attorney promptly requested a voir dire examination when the prosecutor requested during direct examination that Mrs. Westervelt point out, in open court, the person whom she had described as the robber in previous testimony. This motion was denied.[3] In the subsequent cross-examina-

---

2. We do not reach the question of whether a federal judicial officer—judge or United States Magistrate—can ever make findings of eyewitness credibility in habeas corpus proceedings on the basis of transcripts alone. *See Wingo v. Wedding,* 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974); 28 U.S.C. § 636(b) (1968), *as amended,* Pub.L.No. 94–577 (October 21, 1976) (jurisdiction and powers of a United States Magistrate).

3. Q. Now the person we have been talking about who stuck this gun in your back and took that cash box out, is he in Court today?

A. Yes, he is.

Q. Would you point him out, please?

Mr. Walsh: Your Honor please, at this point I would like to have a voir dire examination of the defendant [witness?] before she makes any identification.

tion, the following exchange took place between defense counsel and Mrs. Westervelt:

Q. You have never seen a picture of him [appellant]?

A. No—well, I have now, yes.

Q. When, now?

A. A little while ago.

Q. Just before you came in here?

A. I knew Mr. Fisher—

Q. Just before you came in here, somebody showed you a picture of him. Is that what you are testifying?

A. I saw a picture of him.

Q. Just before you came in here?

A. I don't know where it was. I saw a picture of him at one time.

Q. Didn't you just say that just before you came in here, you saw a picture of him?

A. I saw a picture with papers that I looked at.

Q. Is it not the truth that some police officer or someone connected with police law enforcement, just prior to your coming in here, showed you a picture of this defendant? Isn't that the truth?

A. I saw a picture of him.

Q. Just prior to coming in here?

.    .    .    .    .

A. I saw a picture of him on papers that I was reading.

Q. In the prosecutor's file. Isn't that correct?

A. Prosecutor's file?

Q. Yes, the detective's file.

A. I guess so. I don't know.

Q. Just before you came in here?

A. Yes.

Transcript at 81–83.

On the basis of this testimony, we cannot conclude that appellant's request was frivolous. The precipitous ruling on the request for voir dire effectively prevented counsel from making the normal offer of proof. He availed himself of the only alternate course—he brought out his point during cross-examination. The circumstances at trial demanded a hearing outside the presence of the jury.

### V.

■ In its final argument, the state contends that even if there were constitutional error here, that error was harmless. It urges that appellant's conviction be sustained on the basis of evidence that the cash box handled by the robber was found to contain latent fingerprints positively identified as those of appellant's left thumb and left ring finger. Standing alone, this evidence is most formidable. But it must be considered in light of other proffered testimony: (a) the statement of appellant's acquaintance that he and appellant were in the office one day prior to the robbery in order to discuss a liability insurance policy, and that appellant had legitimately handled the cash box at that time; and (b) Mrs. Westervelt's testimony that the robber had worn a glove on his left hand. Viewed against the various harmless error precepts enunciated by the Supreme Court,[4] we do not agree that the underlying constitutional procedural error may properly be considered harmless.

Given the view we take here, it is not necessary to reach the other contentions of appellant.

The judgment of the district court will be reversed and the cause remanded with a

---

The Court: No, not at this point. Under Miranda, it's not necessary. Proceed. Transcript at 70.

4. *See, e. g., Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

direction to the district court to grant the writ of habeas corpus unless within a reasonable time thereafter the State of New Jersey affords appellant a hearing of the type prescribed by *Jackson v. Denno, supra,* in which appellant's motion to suppress identification testimony may be considered in accordance with the foregoing; the district court to retain jurisdiction of the cause.