608 F.2d 247
 James Willard SUMMITT, Petitioner-Appellant,
v.
Donald E. BORDENKIRCHER, Warden, Kentucky State
Penitentiary, Respondent- Appellee.
John Gregory WATKINS, Petitioner-Appellant,
v.
Donald E. BORDENKIRCHER, Warden, Kentucky State
Penitentiary, Respondent- Appellee.
 Nos. 78-3415, 78-3587.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 5, 1979.
Decided Oct. 19, 1979.
 
 1
 Terrence R. Fitzgerald, Chief App. Defender, Louisville, Ky. (Court-appointed), for petitioner-appellant.
 
 
 2
 John Gregory Watkins, pro se.
 
 
 3
 Robert F. Stephens, Atty. Gen. of Kentucky, Victor Fox, Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.
 
 
 4
 Before LIVELY and MERRITT, Circuit Judges, and BROWN,* District Judge.
 
 
 5
 BAILEY BROWN, Chief District Judge.
 
 
 6
 These two appeals were consolidated for the purpose of considering whether it is a denial of due process for a state court in a criminal trial to decline to conduct a hearing outside the presence of the jury to determine the admissibility of identification evidence. We conclude that such a hearing is not constitutionally required and that the introduction of identification evidence in these cases did not violate due process standards. Accordingly, we affirm the decisions of the district courts.
 
 
 7
 The petitioner, James Willard Summitt, was indicted for rape on September 19, 1974. The rape occurred in Jefferson County, Kentucky late in the evening of July 20, 1974 when two men forced the victim, Donna Jean Furgason, into their car. The incident took place over a period of approximately forty-five minutes.
 
 
 8
 On July 21, 1974, Ms. Furgason reported the rape to the police. She described her assailant as a white male in his thirties, approximately five feet nine inches, 180 pounds, with tattoos on both arms. She looked through approximately twelve volumes of photographs at the county police headquarters in an attempt to identify the person who had raped her. Two days later, she was taken to the city police headquarters to review additional volumes of photographs. At that time, she identified a photograph of James Willard Summitt.
 
 
 9
 Prior to trial, Summitt moved to suppress any in-court identification by Ms. Furgason and requested a hearing out of the presence of the jury to determine the admissibility of the identification evidence. That motion and request were denied.
 
 
 10
 At trial, both the pretrial photographic identification and an in-court identification were introduced. At the conclusion of the evidence, the jury returned a verdict of guilty and recommended life imprisonment. On appeal to the Kentucky Supreme Court, the conviction was affirmed.
 
 
 11
 The petitioner, John Gregory Watkins, was indicted in March, 1975 for armed robbery and assault. The robbery took place at a liquor store in Louisville, Kentucky. During the course of the robbery, an employee in the store was shot in the wrist and in the heart.
 
 
 12
 Donald Goeing, the employee who was shot, described the robber as a young, black man with a light complexion. Walter Smith, the other employee in the store, described the robber as a black man with a light complexion, thirty to thirty-five years old, and approximately five feet, nine inches tall.
 
 
 13
 Two days after the robbery, Walter Smith viewed a lineup consisting of three black men, one of whom was the petitioner Watkins. Watkins had a lighter complexion than either of the other two men in the lineup, though none of them had a particularly dark complexion. Smith identified Watkins but admitted that he was not "completely sure" that Watkins was the person who robbed the store.
 
 
 14
 On the same day, Watkins was taken to the hospital room where Donald Goeing was recovering from his wounds. Goeing identified Watkins, but at the same time he stated that "it could have been close enough that it could have been his twin brother, it could have been somebody else."
 
 
 15
 Prior to his trial, Watkins filed a motion seeking a pre-trial hearing on the admissibility of the identification evidence. The trial judge denied the motion.
 
 
 16
 At the trial, the prosecution relied on the in-court identifications of Watkins by both Smith and Goeing. On cross-examination, the circumstances surrounding both the lineup and the showup were brought out. Moreover, both Smith and Goeing admitted having seen Watkins in the courtroom on several occasions prior to trial. At the conclusion of the prosecutor's proof, the trial court denied Watkins' motion for a mistrial based on the introduction of the identification evidence. The jury returned a verdict of guilty and recommended the maximum sentence. On appeal to the Kentucky Supreme Court, the conviction was affirmed.
 
 
 17
 In both of these cases, the central dispute at trial was over the identification of the person who committed the crime. In every criminal trial, there exists some danger of misidentification. That inherent danger, however, is significantly increased whenever the identification is tainted by unnecessary and unduly suggestive procedures. To deter the use of suggestive identification procedures, the Supreme Court has held that a defendant is entitled to have counsel present at any corporeal identifications which occur after the initiation of criminal proceedings. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). See also Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Even where the right to counsel is not applicable, however, "due process protects the accused against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." Moore v. Illinois, Supra, 434 U.S. at 227, 98 S.Ct. at 464. It is this latter due process protection which the petitioners claim was violated in their state trials.
 
 
 18
 The initial issue presented by these appeals is whether the admissibility of identification evidence must be determined at a hearing outside the presence of a jury. We have no doubt that such a procedure is the preferable one. See Nassar v. Vinzant, 519 F.2d 798 (1st Cir.), Cert. denied, 423 U.S. 898, 96 S.Ct. 202, 46 L.Ed.2d 132 (1975). See also United States v. Poe, 462 F.2d 195 (5th Cir. 1972), Cert. denied, 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83 (1973); United States v. Cranson, 453 F.2d 123 (4th Cir. 1971), Cert. denied, 406 U.S. 909, 92 S.Ct. 1607, 31 L.Ed.2d 821 (1972); United States v. Allison, 414 F.2d 407 (9th Cir.), Cert. denied, 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1969); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (D.C. Cir. 1968), Cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969). An independent hearing on the admissibility of identification evidence, either before trial or at trial outside the presence of the jury, would remove the disadvantage to defendant's counsel of investigating the propriety of the identification evidence in the presence of the jury. In addition, it would protect the jury from being exposed to evidence that might subsequently be determined inadmissible. Kentucky state courts have apparently since endorsed this procedure. See Brown v. Kentucky, 564 S.W.2d 24 (Ct.App.1978). The issue in this case, however, is not whether a hearing outside the presence of the jury is the preferable procedure but whether such a procedure is constitutionally mandated.
 
 
 19
 In Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the Supreme Court held that a defendant's due process rights were violated by a procedure which allowed the same jury that determined the guilt or innocence of a defendant to determine simultaneously the issue of the voluntariness of the defendant's confession. The fundamental premise of Jackson was that "a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, Without regard for the truth or falsity of the confession." Jackson v. Denno, supra at 376, 84 S.Ct. at 1780. (Emphasis added.) A jury that is considering the guilt or innocence of a defendant is likely to allow the truthfulness of a confession to influence its determination of the voluntariness of the confession. To avoid this danger, Jackson established the procedural requirement that, prior to the admission of a confession, the trial judge must make an independent determination of its voluntariness after an adequate hearing on the issue. "(T)he purpose that a voluntariness hearing is designed to serve has nothing whatever to do with improving the reliability of jury verdicts." Lego v. Twomey, 404 U.S. 477, 486, 92 S.Ct. 619, 625, 30 L.Ed.2d 618 (1972). Its purpose is to protect the due process right against the introduction of involuntary confessions, regardless of their reliability.
 
 
 20
 The basis of the due process right against suggestive identification procedures is significantly different.
 
 
 21
 It is, first of all, apparent that the primary evil to be avoided is "a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377 at 384 (88 S.Ct. 967, 19 L.Ed.2d 1247). While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of "irreparable" it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself. It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence in Foster. Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.
 
 
 22
 Neil v. Biggers, 409 U.S. 188 at 198, 93 S.Ct. 375 at 381-382, 34 L.Ed.2d 401 (1972). Thus, whereas the admissibility of confessions is determined without regard to reliability, the admissibility of identification evidence is entirely dependent on reliability.
 
 
 23
 We construe Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967), as holding that due process does not require that the hearing upon which the trial judge makes his independent determination of voluntariness, as is required by Jackson v. Denno, supra, be held outside the presence of the jury.[1] The Supreme Court has never ruled on the precise question presented here. We conclude, however, that, by analogy to the ruling in Pinto, due process does not require a hearing outside the presence of the jury on the issue of the reliability of identification evidence. We recognize, as is pointed out in the dissent citing language in United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), that trial counsel for defendant does bear an extra burden in exploring the reliability of identification evidence in the presence of the jury. However, we note that the issue before us now was not the issue before the Court in Wade, and, further, Pinto was decided shortly after Wade. Moreover, it appears to us that the burden of exploring the voluntariness issue before the jury would be at least as great as the burden of exploring the reliability of identification evidence before the jury.
 
 
 24
 The decision of the Third Circuit in United States v. Driber, 546 F.2d 18 (1976), relied upon by the dissent, does hold that due process requires that the court hold the hearing to determine the admissibility of identification evidence out of the presence of the jury if the request for such a hearing is "not frivolous." (Driber, at 22). We note, however, that in many cases it would be difficult, if not impossible, to determine whether the request was frivolous without holding the hearing. Moreover, Driber relies on federal precedents which may well be examples of the exercise of supervisory powers rather than rulings on the requirements of due process.
 
 
 25
 We conclude, then, that as applied to identification evidence, Jackson v. Denno, supra, and Pinto, supra, only require that the trial court make an independent determination of the reliability of the identification after an adequate hearing. In each of these cases, the state trial court had before it all of the facts concerning the reliability of the identification evidence. The trial court reached the conclusion, based upon these facts, that the evidence was admissible. Since both petitioners received an adequate hearing and an independent determination of the reliability of the identification evidence, we cannot conclude that the procedure for determining the admissibility of the identification evidence violated due process.
 
 
 26
 Having determined the initial procedural issue, we turn next to the substantive issue of whether the introduction of identification evidence in these cases violated due process standards. As we have previously indicated, reliability is the key factor in determining the admissibility of identification evidence. Among the factors relevant to reliability are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, supra, 409 U.S. at 199, 93 S.Ct. at 382. These factors must be weighed against the effect of the suggestive procedure to determine whether the identification is so unreliable as to create a substantial likelihood of misidentification. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
 
 
 27
 The identification evidence introduced at the trial of the petitioner, James Willard Summitt, consisted of both an in-court identification and a pretrial photographic identification. Under some circumstances, the use of a photographic display may enhance the possibility of misidentification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). But each case must be considered on its own facts. United States v. Ayendes, 541 F.2d 601 (6th Cir. 1976), Cert. denied, 429 U.S. 1063, 97 S.Ct. 789, 50 L.Ed.2d 779 (1977). The pretrial photographic identification in this case cannot be characterized as either suggestive or unreliable. Ms. Furgason had ample opportunity to study her assailant. She provided the police with a detailed and accurate description. Soon after the attack, she identified Summit from among a multitude of police photographs that were presented in a neutral fashion. Under these circumstances, we cannot find that there was a substantial likelihood of misidentification. Since we find that introduction of the pretrial identification was not improper, we need not consider whether the in-court identification had an independent basis.
 
 
 28
 At the trial of the petitioner, John Gregory Watkins, the prosecution introduced in-court identifications by the two witnesses to the robbery, Walter Smith and Donald Goeing. These identifications were based on a pretrial lineup and a pretrial showup. Since we believe that there was no independent source for the in-court identifications, the validity of their admissibility is dependent on the validity of the pretrial identification procedures.
 
 
 29
 A showup is inherently suggestive. When only one person is presented to a witness, there is a natural tendency for the witness to feel obligated to provide a positive identification. But in some cases, a showup becomes a necessary identification procedure. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Given the seriousness of the wounds to Donald Goeing, a showup was necessary in this case. That showup was conducted in a manner that did not take advantage or augment its inherent suggestiveness. Goeing had had a clear, albeit brief, opportunity to view the person robbing the liquor store.[2] At the showup, Goeing's identification of Watkins reflected an element of uncertainty, but that element was very small. Based on the totality of the circumstances, we cannot conclude that the identification at the showup was so unreliable as to create a substantial likelihood of misidentification.
 
 
 30
 Unlike a showup, a lineup need not be and should not be unduly suggestive. The lineup in this case, however, to some degree employed the key element of the witness' description, lightness of complexion, to set Watkins apart from the other two persons in the lineup. Watkins, according to the picture of the lineup, was of a somewhat lighter complexion than the other two persons in the lineup. Such an identification procedure probably could have been avoided. But, even so, unnecessary suggestiveness by itself does not require the exclusion of the identification as long as it contains sufficient indicia of reliability. Neil v. Biggers, supra, 409 U.S. at 198, 93 S.Ct. 375.
 
 
 31
 In addition to the suggestiveness of the lineup, there are several facts which indicate possible unreliability. Walter Smith admitted that at the time of the lineup he "wasn't completely sure" that Watkins was the robber. Moreover, Smith originally described the age of the robber as approximately thirty to thirty-five, whereas Watkins was significantly younger. These facts must be weighed against the facts which reflect reliability. Smith had a good opportunity to look at the person robbing the store.[3] While his identification at the lineup contained a degree of uncertainty perhaps greater than Goeing's identification at the showup, the degree of uncertainty was not substantial. That initial uncertainty did not continue. Moreover, Smith was not exposed to any additional suggestive procedures. See Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).
 
 
 32
 The admissibility of the lineup identification presents a very close question. But based on the totality of the circumstances we believe that it was sufficiently reliable that there was no substantial likelihood of misidentification.
 
 
 33
 The issue with respect to each one of the identifications in these cases is limited to whether their introduction into evidence violated due process. A defendant is denied due process only when the identification evidence is so unreliable that its introduction renders a trial unfair. As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given the identification. Manson v. Brathwaite, supra. Given the limited focus of our inquiry, we hold that the introduction of identification evidence in these trials did not violate due process.
 
 
 34
 Finally, we consider the petitioner Watkins' claim that the prosecutor's closing argument deprived him of a fair trial. There is little doubt that several of the prosecutor's remarks were improper.[4] But impropriety alone is not sufficient. Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). "The prosecutorial argument must be so egregious so as to render the entire trial fundamentally unfair." Cook v. Bordenkircher, 602 F.2d 117 (6th Cir. 1979). That point at which improper argument amounts to a constitutional deprivation can only be defined by reference to the totality of the circumstances of the particular case. In this case, we are convinced that the prosecutor's remarks were not so pervasive nor so prejudicial as to deny the petitioner due process.
 
 
 35
 Each of the issues raised in these appeals involve alleged violations of due process. Our scope of review, therefore, is limited to whether the conduct complained of was contrary to basic notions of fairness. Applying this narrow standard of fairness, we conclude that the judgments of the district courts must be and are
 
 
 36
 AFFIRMED.
 
 
 37
 MERRITT, Circuit Judge, dissenting.
 
 
 38
 In each of these habeas corpus cases from Kentucky, there is a serious question concerning the reliability of the courtroom identification of the defendant as the perpetrator of the crime. In both, the identification testimony constitutes the only substantial evidence linking the defendant with the crime. In both, the state trial judge denied the request of defense counsel for a hearing on the question out of the presence of the jury. In such circumstances, I would follow Judge Aldisert's opinion for the Third Circuit in United States v. Driber, 546 F.2d 18 (1976), holding that due process requires a hearing out of the presence of the jury where serious identification questions are present. Otherwise, defense counsel is paralyzed in his efforts to defend his client. He is in the untenable position, as the Supreme Court noted in United States v. Wade, 388 U.S. 218, 241, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149 (1967), of trying by cross-examination of the identification witness "to discover and reveal unfairness, while bolstering the . . . courtroom identification by bringing out and dwelling upon his prior identification."
 
 
 
 *
 Honorable Bailey Brown, Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 We also recognize that the decision is placed on the alternative ground that trial counsel of defendant did not object to holding such hearing in the presence of the jury
 
 
 [2]
 The liquor store was well-lit. Goeing was in the process of filling a cooler with soft drinks. When he heard the words, "This is a holdup," he turned and looked at the robber. Goeing's movements evidently caused the robber to shoot him. Goeing lost consciousness about five seconds later as the robber fled from the store
 
 
 [3]
 Smith was standing at the cash register when three men walked in. One man approached him and asked him for cigarettes. When Smith turned back around, the man had pulled a gun and stated, "This is a holdup." Thus, Smith was face-to-face with the robber for the brief time that the robbery was in progress
 
 
 [4]
 In his closing argument, the prosecutor stated:
 ". . . When they go to the penitentiary they are going to be in the same enclosure with people like themselves who have no respect for the lives and the rights of others, for people who'll just as quickly take away his humanity as he's willing to take that away from other people. But, ladies and gentlemen of the jury that's exactly the kind of community he belongs in
 The only way that we can have any effect on the commission of crimes is to put these people in the community, off the street, out of our community. Put them in the community in which they belong and fix the sentence long enough, so long that you tell everybody in connection with the prisons and the authorities, from the Governor on down, that we don't want this man or men like him in our community.
 . . . This is the only way you can get the message across. These babies are tough. They don't care about the life or dignity or have any respect for other people. The only way you can get them to behave is to get tough with them."
 We have considered similar remarks concerning the defendant's character and the threat to the community to be beyond the bounds of propriety. United States v. Barker, 553 F.2d 1013 (6th Cir. 1977).