**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0925n.06
Filed: December 22, 2006

**No. 05-1398**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TERRENCE WILLIAMS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| FABIAN LAVIGNE, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

Before: SILER and CLAY, Circuit Judges; STAFFORD, District Judge.[*]

**SILER**, Circuit Judge. Petitioner Terrence Williams appeals the denial of his petition for a writ of habeas corpus on the basis that his due process rights were violated by an unduly suggestive identification process and because his right to counsel was violated during a witness interview. For the reasons set forth below, we AFFIRM.

**I.**

Williams was tried and convicted for shooting and killing a bouncer, Larry Woods, at a Detroit nightclub. Woods had maced and evicted Williams and his friends earlier in the evening. Around midnight, some men who the prosecution claimed were in the same gang as Williams went to the club. When one guest became unruly, he and the rest of the group were escorted out of the

---

[*] The Honorable William Stafford, of the United States District Court for the Northern District of Florida, sitting by designation.

club by Woods and others. One of the men began beating on the windows angrily, and Woods came out of the front doors and maced him. Later, the group returned with Williams, after having purchased either a bottle of Windex or ammonia, and approached the front door. It was raining outside and the front door awning was crowded by people trying to escape the downpour. As Woods and other bouncers moved other patrons out of the club and under the awning, a single shot was heard, followed seconds later by two more shots.

Williams was charged with first degree murder under MCL § 750.316. He was also charged with the illegal possession of a firearm. Three people identified Williams as the shooter. Christopher Pearl testified he was waiting under the awning when the bouncers opened the door and evicted the other patrons, at which point he heard the first shot coming from the direction of a phone booth. Then he saw Williams, five feet away, fire two shots in the direction of Woods, one of which hit Woods. Diona Morris was among those evicted in the later altercation. As they exited, she saw Williams, whom she recognized, holding a gun and pointing it in the direction of the bouncers and she heard gunshots. Lastly, Derrick Harrell witnessed one of the bouncers being sprayed by the bottle of Windex or ammonia, and he saw Woods mace someone outside the door. He then saw a man in a black leather coat, whom he identified as Williams, fire two shots toward the door.

Williams was convicted of first degree murder and was sentenced to life imprisonment consecutive to two years for the firearm offense. He lost on direct appeal and later filed a state habeas corpus petition, which was denied. He then filed a petition in the district court for the Western District of Michigan. The district court denied the petition. A Certificate of Appealability was granted on the following issues: (1) whether the trial court erred in admitting Pearl's in-court

identification, (2) whether Williams was entitled to counsel before police met with Harrell, and (3) whether defense counsel was ineffective for failing to object to issue (2).

## II.

We review the denial of habeas corpus de novo. *See Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

Here, Williams fails to establish that the Michigan Supreme Court misapplied clearly established federal law in determining that the lineup was not unduly suggestive. He claims that because Pearl was shown several lineups and photo arrays, all of which contained Williams's picture, this had the impermissible effect of "funneling" down the possibilities through Pearl's recognition and recall. Due process requires that an identification be sufficiently reliable and the procedure for making such an identification not be unduly suggestive. "Reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). We reject as untenable the notion that Pearl, over the course of several months and in the course of multiple faces, was unable to hold constant Williams's visage. We also agree with the Michigan Supreme Court that Pearl's earlier misidentification goes to credibility which is irrelevant to undue suggestiveness.

Finally, Williams fails to prove prejudice. Two other witnesses, Harrell and Morris, also testified as eyewitnesses and the veracity of their identifications is not in dispute. Morris was able to identify Williams because she knew him, which is a strong indicator of reliability. This court has repeatedly emphasized the greater reliability of a witness identification where the witness knew the defendant previously. *See, e.g., Towns v. Smith*, 395 F.3d 251, 260 (6th Cir. 2005) (finding

ineffective assistance of counsel for not challenging eyewitness identification where witness did not know defendant personally); *Matthews v. Abramajtys*, 319 F.3d 780,789 (6th Cir. 2003).

Williams contends that he was denied his Sixth Amendment right to counsel because his attorney was not informed of and was not permitted to attend a meeting between the police and Harrell. The Sixth Amendment protects a defendant's right to have his counsel present during the critical stages of a criminal proceeding. *See Michigan v. Jackson*, 475 U.S. 625, 629 (1986). However, this has never been applied to a witness interview by the police. For this reason, we also reject Williams's ineffective assistance of counsel claim. As there was no potential violation of his rights with respect to the Williams interview, his counsel did not err by failing to object to Harrell as a witness.

**AFFIRMED.**

**CLAY, Circuit Judge, concurring in part and dissenting in part**. I concur in the majority's conclusion that the Michigan Court of Appeals did not unreasonably apply controlling federal law in disposing of Defendant's challenge to the Christopher Pearl identification. However, in my view, the Michigan Court of Appeals improperly characterized Defendant's ineffective assistance of counsel claim, entangling it with a third claim not raised on petition to this Court.[1] Accordingly, I respectfully dissent from that part of the majority opinion, and would reverse the district court's denial of relief on that issue and remand for an evidentiary hearing.

The trial court convicted Defendant on the basis of three eyewitness identifications, a detective's testimony that Defendant was a member of the Wealthy Street Boys gang, the testimony of another detective that a gang member also present at the scene overheard someone ask Defendant if he was "strapped," and that Defendant had responded that he "always ha[d] my man with me," (J.A. at 157-58), and an officer's expert testimony on gang membership and codes of conduct in Grand Rapids. Two of the three eyewitness identifications – the strongest evidence against Defendant at trial – are challenged here. Specifically, Defendant's brief on appeal raises two issues:

---

[1]Proceeding *in propria persona* throughout his direct appeals and before the district court on habeas, Defendant persistently raised the issue of trial counsel's ineffectiveness in failing to move for suppression of Derrick Harrell's eyewitness identification. Defendant attacked Harrell's testimony on two grounds: (1) a claim that Defendant had a constitutional right to have counsel present at a meeting between Harrell and the police; and (2) the unduly suggestive nature of Harrell's identification. (J.A. at 46-48, 538-40, 692-95) The Michigan State Court of Appeals, the district court below, and Respondent have consistently misconstrued the basis for Defendant's ineffective assistance claim, narrowly characterizing it with reference to Defendant's purported right to have counsel present at the meeting between Harrell and police. (J.A. at 465-72, 682-83) In my view, this Court now follows suit. Properly framed, an inquiry into trial counsel's effectiveness requires this Court to evaluate the procedure that yielded Harrell's identification and the likelihood of misidentification.

first, whether the trial court erred in admitting witness Christopher Pearl's in-court identification of Defendant; and second, whether trial counsel rendered ineffective assistance in failing to object to witness Derrick Harrell's testimony.

While Defendant's due process challenge to the Christopher Pearl eyewitness identification presents an incredibly close question, we are bound on habeas review to defer to the state court's conclusion unless it works an "unreasonable application" of federal law, "resulted in a decision that was contrary to" that law, or rests upon "an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2); *Williams v. Taylor*, 529 U.S. 362, 410-11 (2000). At the outset, it should be noted that the Michigan Court of Appeals rendered an incomplete recitation of the facts presented at trial. The court recounts only two lineups. *See People v. Williams*, No. 229926, slip op. at 2 (Mich. App. July 26, 2002). The trial court record indicates that Pearl viewed a photo array including a picture of Defendant in January 1999, a lineup in February 1999 not including Defendant, a December 1999 lineup including Defendant at which Pearl identified another individual, a photograph of the December 1999 lineup, and an April 2000 lineup at which both Defendant and one other individual from the December lineup were present. Pearl ultimately identified Defendant after that final lineup. However, as the Michigan Court of Appeals noted,

> testimony elicited at trial reveals that Pearl was able to identify defendant in a corporeal lineup from the first time he saw him in a lineup, but simply declined to do so. Pearl attended that lineup only after retaining counsel and being properly subpoenaed. He identified someone other than defendant when asked to identify the shooter in the lineup, but testified that he did so only because he wanted investigators to leave him alone. Pearl ultimately identified defendant as the shooter in a corporeal lineup in April 2000, but informed investigators that he (Pearl) would be difficult to find at the time of trial.

*Williams*, No. 229926, slip op. at 2. These factual findings have significant record support. (*See* J.A. at 210-12, 269, 272) As a result, deference to those factual findings is the appropriate course. *See* 28 U.S.C. § 2254(d)(2); *Wainwright v. Goode*, 464 U.S. 78, 85 (1983).

Deference to the state court's legal determination is also appropriate. Clearly established federal law does not mandate a finding of undue suggestiveness merely because a witness viewed multiple photo arrays and lineups before ultimately identifying the defendant. The encounters must "steer[] the witness to one suspect or another, independent of the witness's honest recollection" to be unduly suggestive. *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001) (citing *United States v. Russell*, 532 F.2d 1063, 1068 (6th Cir. 1976)). The record indicates that Pearl's honest recollection led him to identify Defendant, and that the lineups and photo arrays did not affect his ultimate identification.

Because unduly suggestive procedures did not procure the Pearl identification, the Michigan Court of Appeals needlessly considered the reliability of the identification. *See Neil v. Biggers*, 409 U.S. 188, 199 (1972) (only if the identification follows from impermissibly suggestive process does the court consider whether, under the totality of the circumstances, the identification was nevertheless reliable). Although not dispositive here, the court's failure to consider all of the *Biggers* factors in adjudging the reliability of the Pearl identification is troubling. Presumably, a *totality of the circumstances* analysis requires courts to truly account for the *totality* of relevant factors bearing on the inquiry. The Michigan Court of Appeals weighed only two of the five *Biggers* factors: Pearl's opportunity to view the shooter and his level of certainty. *Williams*, No. 229926, slip op. at 2-3. It wholly failed to account for Pearl's degree of attention, the accuracy of his prior description,

and the length of time between the crime and the confrontation. *Id.* Where unduly suggestive procedures are found, such incomplete consideration of factors relevant in the *Biggers* analysis may support habeas relief.

The greater problem with the state court's disposition – and the basis for my dissent – lies in its misapprehension of Defendant's ineffective assistance claim. The Michigan Court of Appeals neglected to address counsel's alleged ineffectiveness in failing to object to Derrick Harrell's identification on due process grounds. Rather, assessing counsel's action solely with reference to Defendant's now-abandoned claim of a Sixth Amendment right to the presence of counsel at the Harrell meeting, the court concluded that "counsel did not render ineffective assistance in failing to make a meritless objection . . . on this basis." *Williams*, No. 229926, slip op. at 10. In improperly confining its consideration of Defendant's ineffective assistance claim, the state court failed to adjudicate the due process basis for that claim on the merits. *See, e.g.*, *Summitt v. Bordenkircher*, 608 F.2d 247, 250 (6th Cir. 1979) ("Even where the right to counsel is not applicable, . . . 'due process protects the accused against the introduction of evidence of, or tainted by, unreliable . . . identifications obtained through unnecessarily suggestive procedures.'"). Accordingly, I review the claim *de novo*. *Wiggins v. Smith*, 539 U.S. 510, 528-31 (2003) (reviewing the record *de novo* where the state court made no finding on the scope of counsel's investigation); *see also McKenzie v. Smith*, 326 F.3d 721, 726-27 (6th Cir. 2003) (observing that where "there are simply no results, let alone reasoning, to which this court can defer," deference under 28 U.S.C. § 2254(d)(1) is inappropriate and this Court reviews the claim *de novo*); *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004)

(applying *de novo* review to ineffective assistance claim not adjudicated on the merits by the state court).

Defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to satisfy either prong of the inquiry is dispositive. *Id.* at 697. In my view, Defendant suffered prejudice because counsel did not bring a motion to suppress the Derrick Harrell (hereinafter "Harrell") in-court identification. A "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Howard v. Bouchard*, 405 F.3d 459, 481 (6th Cir. 2005). The probability need only be so great as to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Howard*, 405 F.3d at 481. Counsel's failure to move to suppress unduly suggestive identifications can form the basis of an ineffective assistance claim. *See, e.g.*, *Howard*, 405 F.3d at 479-85; *cf. Russell*, 532 F.2d at 1067 ("[O]f all the evidence that may be presented to a jury, a witness' in-court statement that 'he is the one' is probably the most dramatic and persuasive."). The leap from failure to move for suppression to a finding of prejudice requires careful consideration of whether, consistent with due process, the witness would nevertheless have been permitted to identify Defendant. *See Howard*, 405 F.3d at 485; *Millender v. Adams*, 376 F.3d 520, 524-25 (6th Cir. 2004).

The Due Process Clause requires suppression of Harrell's in-court identification. Well-settled Supreme Court precedent recognizes that "[t]he Due Process Clause . . . forbids [identification procedures that are] unnecessarily suggestive and conducive to irreparable mistaken identification." *Kirby v. Illinois*, 406 U.S. 682, 691 (1972). To guard against violations of due

process, the Court's jurisprudence establishes a two step inquiry for assessing the reliability of eyewitness testimony. *Biggers*, 409 U.S. at 198-200; *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992). The court first evaluates "the undue suggestiveness of the preidentification encounters." *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986). Such encounters become unduly suggestive when the procedures employed "steer[] the witness to one suspect or another, independent of the witness's honest recollection." *Wilson*, 250 F.3d at 397 (citing *Russell*, 532 F.3d at 1068).

In my view, Harrell's identification occurred under unduly suggestive circumstances. Undoubtedly, a suspect's presence at the defense table would suffice to "steer[] the witness" to identify that suspect. *See Wilson*, 250 F.3d at 397; *see also Stovall v. Denno*, 388 U.S. at 302 ("The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned."); *Foster v. California*, 394 U.S. 440, 443 (1969) ("The suggestive elements in this identification procedure made it all but inevitable that [the witness] would identify petitioner whether or not he was in fact 'the man.' In effect, the police repeatedly said to the witness, 'This is the man.'"); *Russell*, 532 F.2d at 1069 ("[I]t is suggestive to permit a witness to observe a defendant in manacles."); *Summitt*, 608 F.2d at 252. Harrell first affirmatively identified Defendant at a preliminary examination nearly fifteen months after the shooting, where Defendant conspicuously sat at the defense table dressed in green overalls.

Casting additional doubt on the identification, police had spoken with Harrell about the incident on several occasions previously. Police located Harrell and, five days after the incident, showed him a photo array, from which he did not identify a suspect. Shortly thereafter, police requested that Harrell attend a lineup, and he did not attend. Approximately a year later, police

contacted Harrell and again requested that he attend a lineup. Harrell went to that lineup and "couldn't pick [the shooter] out." (J.A. at 131) When asked whether he had recognized the shooter in the lineup, Harrell replied, "Yes and no, because it was almost a year later. Your memory only can go so long where – a year from now, I would never put – just because somebody looks like that or something, not exact words – or saying that's him." (*Id.*) About one week after the second lineup, Harrell's attorney contacted him and, in Harrell's words, "the way he talked to [him] kind of basically changed [his] mind about some things." (J.A. at 133) At an in-court pretrial examination, Harrell then identified Defendant on April 13, 2000. These circumstances raise "a very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).

As the majority correctly notes, however, "reliability is the linchpin," *Braithwaite*, 432 U.S. at 114, and admitting reliable eyewitness identifications in no way offends constitutional guarantees of due process. Accordingly, I next considers whether, under the totality of the circumstances, the identification was nevertheless reliable. *Biggers*, 409 U.S. at 199. *Biggers* sets forth five factors relevant to the totality: the witness's opportunity to view the criminal, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, their level of certainty in identifying the suspect, and the length of time elapsed between the crime and the identification. *Id.* at 199-200.

Taking the totality of the circumstances into account, Harrell's identification does not bear sufficient indicia of reliability. Although Harrell reported being less than a foot from the shooter, he observed the shooter for a mere two *seconds* at a time when he was "backing away from

somebody being maced . . . trying to avoid getting maced" himself, (J.A. at 262, 264). Moreover, the shooting occurred in the middle of the night, at a time when the only light emanated from the club and any streetlights nearby. Given Harrell's incredibly brief glimpse of the shooter and the surrounding circumstances at the scene, the first *Biggers* factor – opportunity to view the suspect – weighs against reliability. *See Russell*, 532 F.2d at 1066 ("There is great potential for misidentification when a witness identifies a stranger based solely upon a single brief observation."); *Webb v. Havener*, 549 F.2d 1081, 1086 (6th Cir. 1977) (witness observed suspect for a few minutes, and identification found not reliable); *cf. Howard*, 405 F.3d at 472 (witness had a good opportunity to view the suspect where he stood "within 3-6 feet, . . . looked at the shooter for more than a minute," and viewed him three times). Harrell's degree of attention also militates against reliability in view of the commotion at the scene, his need to avoid being maced, and the highly stressful circumstance of hearing gunshots from behind. *See Russell*, 532 F.2d at 1066 (finding "great potential for misidentification" where "the observation was made at a time of stress or excitement"). Further, the fifth factor, the length of time between the crime and the confrontation, weighs in Defendant's favor as nearly 15 months elapsed here, (J.A. at 128, 132). *See Biggers*, 409 U.S. at 201 (noting that "a lapse of seven months . . . would be a seriously negative factor in most cases"); *United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004) (five years between crime and identification undercuts reliability).

The third and fourth *Biggers* factors favor reliability. Harrell's descriptions of the shooter immediately following the incident and at trial vary only slightly. In Harrell's original description, he indicated the shooter was a black male, five foot eight inches tall, 190 pounds wearing a black

hip-length leather coat, dark boots, with a goatee and his hair styled in a "bald fade."[2] (J.A. at 264-65) At trial, Harrell stated the shooter wore a black hat, but that his head was bald on the side. Consistent with his earlier description, he noted that the shooter wore a black leather coat that night. Additionally, Harrell indicated "[a] hundred percent" confidence in his identification. (J.A. at 264) It should be noted, however, that Harrell's certainty is somewhat tempered by his apparent inability to identify the shooter when presented with a photo array and at a previous lineup. Balancing all of these considerations, the totality of the circumstances favors Defendant in my view, and I cannot conclude the identification comports with the requirements of the Due Process Clause.

A "reasonable probability" therefore exists that Defendant suffered prejudice as a result of counsel's failure to move for suppression of Harrell's identification testimony. *See Strickland*, 466 U.S. at 694. The fact that Harrell testified at trial and rendered eyewitness testimony identifying Defendant when, in fact, his identification does not bear sufficient indicia of reliability, "undermine[s] confidence in the outcome" of Defendant's trial. *See id.* This finding gains force especially in view of the great weight juries often afford eyewitness testimony, *see Russell*, 532 F.2d at 1067, and the importance of eyewitness identification testimony in Defendant's case.

Defendant must also show deficient performance under *Strickland*. Counsel performs deficiently if his conduct "f[a]ll[s] below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Objectively reasonable representation is properly measured with reference to "prevailing professional norms" and the inquiry takes into account all circumstances at the time of

---

[2]Harrell described the bald fade as a cut that is "bald on the side and fades into longer hair at the top." (J.A. at 265)

the conduct. *Id.* at 688-89. Here, a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

In *Howard*, precedent factually similar to the case at bar, this Court considered a claim of ineffective assistance based on trial counsel's failure to bring a motion to exclude the identifications of two of three eyewitnesses, and his failure to object to the admission of those identifications at trial. 405 F.3d at 479-81. At an evidentiary hearing, counsel testified that he "chose not to challenge [the two witnesses] because he thought it would be fruitless – 'the arguments would have been cumulative . . . and . . . the court would probably rule the exact same way.'" *Id*. at 479-80. Additionally, he

> testified that he 'probably' believed that it would have served his client better to save the cross-examination for the jury trial, and let the jury decide whether the identifications were credible. He might not have wanted to give the witnesses an opportunity to be prepared for the kinds of questions he might ask on cross-examination at trial.

*Id*. at 479-80. The court found counsel's representation fell below reasonable professional standards because he violated "one of the most basic duties of a trial lawyer" – preserving issues for appeal – in neglecting to object to the identifications at trial. *Id.* The court further concluded that counsel's failure to move for exclusion of the two identifications fell below reasonable standards as it did not follow from any "tactical thinking" on counsel's part. *Id*. at 481. As the court aptly noted, "[w]hen faced with the possibility of removing two out of three eyewitnesses, a professionally competent defense attorney would at least raise the motion in order to preserve it for appeal." *Id*.

Here, counsel cross-examined Harrell at trial, bringing to light many of the concerns about suggestiveness and reliability that support a motion to suppress in-court identifications. Nonetheless,

counsel failed to object to the admissibility of Harrell's in-court identification testimony and, therefore, violated his duty to preserve the issue for appeal. However, on the face of the record, which is devoid of any evidentiary hearing exploring counsel's performance, I cannot say whether counsel's actions were objectively reasonable. Typically, where the petitioner "failed to develop the factual basis of a claim in State court proceedings," 28 U.S.C. § 2254(e)(2) permits evidentiary hearings to do so on petition for habeas in only narrowly circumscribed situations. Yet "only a prisoner who has neglected his rights in state court need satisfy these conditions." *Williams v. Taylor*, 529 U.S. 420, 435 (2000); *see also Mason v. Mitchell*, 320 F.3d 604, 621 n.6 (2003). As this Circuit has stated, "the question is not whether the petitioner has succeeded in developing the record, but whether the petitioner has diligently attempted to do so." *Mason*, 320 F.3d at 621 n.6. Defendant two times requested an evidentiary hearing – both in the Michigan Court of Appeals and before the state's Supreme Court. (J.A. at 286, 393, 439, 472) On both occasions, Defendant met with denial. Thus, § 2254(e)(2) does not bar relief in the form of an evidentiary hearing in Defendant's case.

I would accordingly remand to the district court for an evidentiary hearing to afford Defendant the opportunity to develop the factual underpinnings for his ineffective assistance claim. *See Howard*, 405 F.3d at 479 (observing that "the district court held an evidentiary hearing for the express purpose of assessing trial counsel's shortcomings").