James Willard SUMMITT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

April 22, 1977.

Terrence R. Fitzgerald, Deputy Public Defender, David M. Lewis, Asst. Dist. Defender, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., Victor Fox, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

James Willard Summitt appeals from a judgment sentencing him to life imprisonment pursuant to a jury verdict finding him guilty of rape. KRS 435.090 (now superseded by the Kentucky Penal Code, eff. January 1, 1975).

Shortly after midnight of July 20–21, 1974, Donna Jean Furgason was abducted by two men and raped by one of them. Some 20 hours later, after having reviewed over 1200 "mug shots" at the headquarters of the Jefferson County and Louisville police, she identified a photograph of the appellant as the man who raped her. In due course he was arrested and brought to trial. His defense was a denial that he was the guilty party.

The first contention on which Summitt relies for a reversal is that the trial court erred in permitting a police detective to relate substantive details of the report Donna had given him before she looked through the photographs. He stated, for example, that she was fearful because her assailant had warned her that if she reported the incident to the police he would do harm to her and her family, and that she described him as follows:

"The subject that had done the rape was supposed to have been a white male, in his 30's approximately five foot nine, 180 to 190 pounds, had a rough complexion and had tattoos on both arms. She said that she heard him—she knew that he went by the name of Jimbo, that was his nickname, and that she had learned this during the offense."

The detective was the first witness called by the Commonwealth, and when he began to testify from his report Summitt's counsel objected on grounds of the hearsay rule. In overruling the objection the trial court commented, "She is going to testify."

We agree that from the standpoint of this witness the statement received from the victim was purely hearsay and at this stage of the trial was inadmissible. As it developed, however, and in our opinion would inevitably have developed, the trial focused on the reliability of the identification. Even had Donna testified before the detective, the only avenue of defense was to discredit her initial identification of Summitt from the police photograph. Once that attack was made through cross-examination, evidence that she had accurately described him before she saw the photograph was competent for corroborative purposes. Cf. 4 Wigmore, Evidence §§ 1130, 1132 (Chadbourne rev. 1972); *Preston v. Commonwealth*, Ky., 406 S.W.2d 398, 403 (1966). So, while the detective should not have been allowed to give the details of what Donna said to him during their first interview until after she had appeared as a witness and had been cross-examined, the error was erased by subsequent legitimation of the incompetent testimony.

Before the first witness was introduced, counsel for the appellant unsuccessfully sought an evidentiary hearing on his motion to suppress or exclude Donna's in-court identification of Summitt. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), is cited for the proposition that the denial of such a hearing is constitutionally fatal. As the Commonwealth points out, however, the pertinent decision with reference to photographic identification is *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), which says:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at p. 384, 88 S.Ct. at p. 971.

Before viewing the mug-shot files Donna had described the appellant as having a "rough" complexion and tattoos on his biceps. Under cross-examination she strongly resisted the insinuation that her in-court identification was influenced by her having seen Summitt several times during pretrial court appearances. She said that she got a good look at him "right in the light at first when we went through that bar. We were in the light and I know that was him," and "I knew his face right away . . . I picked him right out of there." Although the particular photograph from which she identified him was not available at the trial, the detective was positive that it did not show his arms. Counsel's cross-examination of both Donna and the detective was searching, tenacious and thoroughly competent to test the reliability of the identification. We find no error in the trial court's refusal to conduct a suppression hearing and no semblance of impermissible suggestiveness in the identification procedure.

The last claim of error relates to the following testimony elicited from the detective:

Q—"Were you present at any time with the defendant after he had been placed under arrest?"

A—"Yes, sir, I went with him to talk to him to try to determine if there was a second party involved."

Q—"And did you advise him of his Miranda rights before you talked to him, or was he advised of his rights?"

A—"Yes, sir, I advised him of his rights."

Q—"Did he give a statement to you of any kind?"

A—"No, sir, he did not."

■ As the appellant had not made any statement, there was of course no occasion to inquire whether he had been advised of his right to remain silent. Hence it might not be altogether unreasonable for one with a nasty mind to suspect that the prosecutor's design was to get it across to the jury that he did not deny his guilt. As it is, however, appellant's trial counsel must not have thought it hurt, because he did not voice any objection. In the absence of an objection or some other prompt request for relief there was no possible error on the part of the trial court.

Nevertheless, appellant contends that this alleged invasion of his Fifth Amendment protection was so egregious in view of the closeness of the case and the severity of the penalty that a reversal is mandatory anyway. We do not regard the evidence as all that close. The identification, for all that counsel may denigrate it, was positive and convincing. The witnesses referred to in the appellant's brief as having corroborated his testimony were not able to render much help. His story that his leg was in a cast broke down when the hospital bill indicated that the accident in which it was hurt happened on the night of July 23–24, 1974, three days after the rape. Moreover, although we wish to discourage the type of questioning here under discussion, and to warn against its possible consequences, we are not ready to hold that in this particular instance it was all that bad. Certainly it was innocuous in comparison with the example in *Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218 (1976). The prosecuting attorney did not allude to it in his cross-examination of the appellant, nor did he mention it in his summation to the jury. There having been no objection, there was no error on the part of the trial court. If the interrogation invaded the appellant's Fifth-Amendment right of silence (which we do not decide), we find beyond a reasonable doubt that it was not prejudicial.

The judgment is affirmed.

All concur.