# WATKINS *v.* SOWDERS, WARDEN

No. 79-5949.   Argued November 10, 1980—Decided January 13, 1981*

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, POWELL, REHNQUIST, and STEVENS, JJ., joined.

*Together with No. 79-5951, *Summitt* v. *Sowders, Warden*, also on certiorari to the same court.

BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 349.

*Frank W. Heft, Jr.,* argued the cause for petitioners in both cases. With him on the briefs was *Daniel T. Goyette.*

*Victor Fox,* Assistant Attorney General of Kentucky, argued the cause for respondent in both cases. With him on the brief were *Steven L. Beshear,* Attorney General, and *Joseph R. Johnson* and *Penny R. Warren,* Assistant Attorneys General.

JUSTICE STEWART delivered the opinion of the Court.

These cases, consolidated for argument and decision in the Court of Appeals and in this Court, present the question whether a state criminal trial court is constitutionally compelled to conduct a hearing outside the presence of the jury whenever a defendant contends that a witness' identification of him was arrived at improperly.

I

A

John Watkins, the petitioner in No. 79–5949, was convicted in a Kentucky court of attempting to rob a Louisville liquor store. On the night of January 11, 1975, four men entered the store, one of whom asked for a pack of cigarettes. Walter Smith, an employee of the store, turned around to get the cigarettes, and one of the men said "[t]his is a hold-up." Donald Goeing, a part owner of the store, had been stocking a soft-drink cooler, and when he heard those words, he turned towards the robbers. The man who had spoken thereupon fired two shots at him, one striking him in his arm, the other in the region of his heart. The four men then fled.

That night Smith and Goeing described the gunman to the police. Two days later, the police in the presence of Smith conducted a lineup consisting of three men, one of whom was

Watkins. Smith identified Watkins as the gunman. That same day, the police took Watkins to Goeing's hospital bed, and Goeing identified Watkins as the man who had shot him. Watkins was then charged with first-degree robbery and first-degree assault.

At the subsequent trial of Watkins, the prosecution called Smith and Goeing as witnesses. They both identified Watkins as Goeing's assailant but were not asked by the prosecution about the lineup or the showup. Watkins' counsel, however, cross-examined both men at some length about both the lineup and showup. The prosecution then called a police officer. He testified that he had taken Watkins to be identified at the hospital because "at that time there was some question as to whether or not Mr. Goeing was going to survive the incident." Watkins' counsel cross-examined the officer about both the showup and the lineup and through him introduced pictures of the lineup. For the defense, Watkins' counsel called two witnesses who said that they had been in a pool hall with Watkins at the time of the robbery and another witness who said he had been in the liquor store at the time of the robbery and had not seen Watkins. Finally, Watkins himself testified to his innocence.

On appeal, as he had at trial, counsel for Watkins argued that the trial court had a constitutional obligation to conduct a hearing outside the presence of the jury to determine whether the identification evidence was admissible. The Supreme Court of Kentucky rejected that argument. Relying on its decision in *Ray* v. *Commonwealth*, 550 S. W. 2d 482, 483 (1977), the court said " '[a]lthough we are of the opinion that the holding of such a hearing prior to the introduction of this testimony would have been the preferred course to follow, we are not persuaded the failure to have done so requires reversal of appellant's conviction.' " *Watkins* v. *Commonwealth*, 565 S. W. 2d 630, 631 (1978). The court found that the identification procedures "fail[ed] to

raise any impermissible suggestiveness" and that Watkins "was in no way prejudiced." *Ibid.*

Watkins then unsuccessfully sought a writ of habeas corpus in the United States District Court for the Western District of Kentucky. That court held that, "although pretrial suppression hearings are preferable, the failure to hold them does not require the reversal of a conviction."[1] The court also found that admission of neither the lineup nor the showup evidence at the state trial had violated constitutional standards.

The Court of Appeals for the Sixth Circuit affirmed the District Court's judgment and, like the District Court, ruled that a hearing on the admissibility of identification evidence need not be held outside the presence of the jury. Turning to the evidence itself, the court cited *Stovall* v. *Denno*, 388 U. S. 293, as authority for holding that "[g]iven the seriousness of the wounds to Donald Goeing, a showup was necessary in this case." *Summitt* v. *Bordenkircher*, 608 F. 2d 247, 252. The federal appellate court also held that the lineup evidence had been constitutionally admissible at the state trial.

## B

James Summitt, the petitioner in No. 79–5951, was convicted in a Kentucky court of rape. Late on the night of July 20, 1974, the prosecutrix was forced into a car occupied by two men, driven to an isolated location, raped by one of the men, and then returned to her own car. The next day she reported the crime to the police, described the rapist, and looked through 12 volumes of photographs from police files, without identifying the man who had raped her. Two days later she was taken to another police station, where she examined more pictures. A police officer testified at the subsequent trial of Summitt that "after a short time she pointed to the defendant's picture and said: 'This is the man that raped me.

---

[1] The opinion of the District Court is unreported.

There's no doubt about it, this is Jimbo, the man that raped me.'" In addition to the officer, the prosecutrix and her stepfather as witnesses for the prosecution described the prosecutrix's examination of the police photographs, and the prosecutrix testified that Summitt was the man who had raped her. There was extensive cross-examination.

The Supreme Court of Kentucky found "no error in the trial court's refusal to conduct a suppression hearing and no semblance of impermissible suggestiveness in the identification procedure." *Summitt* v. *Commonwealth,* 550 S. W. 2d 548, 550 (1977). Summitt then sought a writ of habeas corpus in the United States District Court for the Western District of Kentucky, but that court found no constitutional error. The Court of Appeals, as in the consolidated *Watkins* case, affirmed the judgment of the District Court, 608 F. 2d 247.

We granted certiorari to consider the constitutional claim asserted by both petitioners throughout their state and federal court proceedings. *Sub nom. Watkins* v. *Bordenkircher* and *Summitt* v. *Bordenkircher,* 445 U. S. 926.

## II

The issue before us is not, of course, whether a trial court acts prudently in holding a hearing out of the presence of the jury to determine the admissibility of identification evidence. The prudence of such a hearing has been emphasized by many decisions in the Courts of Appeals, most of which have in various ways admonished trial courts to use that procedure.[2] The

---

[2] *E. g., United States* v. *Mitchell,* 540 F. 2d 1163 (CA3 1976); *United States* v. *Cranson,* 453 F. 2d 123 (CA4 1971); *Haskins* v. *United States,* 433 F. 2d 836 (CA10 1970); *United States* v. *Ranciglio,* 429 F. 2d 228 (CA8 1970); *United States* v. *Allison,* 414 F. 2d 407 (CA9 1969); *United States* v. *Broadhead,* 413 F. 2d 1351 (CA7 1969); *Clemons* v. *United States,* 133 U. S. App. D. C. 27, 408 F. 2d 1230 (1968) (en banc). The Court of Appeals for the Fifth Circuit has left the matter to the discretion of the district courts. *United States* v. *Smith,* 546 F. 2d 1275 (1977). At least two Federal Courts of Appeals have commended hearings outside

issue here, rather, is whether such a hearing is required by the Due Process Clause of the Fourteenth Amendment.

In urging an affirmative answer, the petitioners first cite cases holding that a defendant has a right to the presence of his counsel at a postindictment lineup, *e. g., United States v. Wade,* 388 U. S. 218, and that an identification procedure, in the absence of a lineup, may be so defective as to deprive a defendant of due process of law, *e. g., Stovall v. Denno,* 388 U. S. 293. The petitioners then analogize their cases to *Jackson v. Denno,* 378 U. S. 368, in which this Court enunciated a defendant's right "to have a fair hearing and a reliable determination on the issue of voluntariness," *id.,* at 377, and in which the Court declared unconstitutional a New York procedure which gave the jury what was in practice unreviewable discretion to decide whether a confession was or was not voluntary.

The petitioners contend that *Jackson v. Denno* established a *per se* due process right to a hearing outside the presence of the jury whenever a question of the voluntariness of a confession is raised. If such a hearing is required where the voluntariness of a confession is at issue, it follows, the petitioners argue, that a similar hearing must also be required where the propriety of identification procedures has been questioned.

Even if it be assumed that *Jackson v. Denno* did establish the *per se* rule asserted,[3] the petitioners' argument must fail,

---

the presence of the jury to state courts, *Nassar v. Vinzant,* 519 F. 2d 798 (CA1 1975); *United States ex rel. Phipps v. Follette,* 428 F. 2d 912 (CA2 1970), and at least one has held that due process may in some circumstances require a hearing outside the presence of a jury to decide the admissibility of identification evidence. *United States ex rel. Fisher v. Driber,* 546 F. 2d 18 (CA3 1976).

[3] See *Pinto v. Pierce,* 389 U. S. 31, 32:

"This Court has never ruled that all voluntariness hearings must be held outside the presence of the jury, regardless of the circumstances. . . . [B]ecause a disputed confession may be found involuntary and inadmissi-

because *Jackson* v. *Denno* is not analogous to the cases now before us. The Court in *Jackson* did reject the usual presumption that a jury can be relied upon to determine issues according to the trial judge's instructions, but the Court did so because of the peculiar problems the issue of the voluntariness of a confession presents. The Court pointed out that, while an involuntary confession is inadmissible in part because such a confession is likely to be unreliable, it is also inadmissible even if it is true, because of the " 'strongly felt attitude of our society that important human ˙ values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will.' " *Id.,* at 385, quoting *Blackburn* v. *Alabama,* 361 U. S. 199, 206–207. The Court concluded in *Jackson* that a jury "may find it difficult to understand the policy forbidding reliance upon a coerced, but true, confession . . . . Objective consideration of the conflicting evidence concerning the circumstances of the confession becomes difficult and the [jury's] implicit findings become suspect." *Id.,* at 382.

Where identification evidence is at issue, however, no such special considerations justify a departure from the presumption that juries will follow instructions. It is the reliability of identification evidence that primarily determines its admissibility, *Manson* v. *Brathwaite,* 432 U. S. 98, 113–114; *United States ex rel. Kirby* v. *Sturges,* 510 F. 2d 397, 402–404 (CA7 1975) (Stevens, J.). And the proper evaluation of evidence under the instructions of the trial judge is the very task our system must assume juries can perform. Indeed, as the cases before us demonstrate, the *only* duty of a jury in cases in which identification evidence has been admitted will often be to assess the reliability of that evidence. Thus the

___

ble by the judge, it would seem prudent to hold voluntariness hearings outside the presence of the jury. . . . In this case, however, the confession was held voluntary and admitted as evidence suitable for consideration by the jury."

Court's opinion in *Manson* v. *Brathwaite* approvingly quoted Judge Leventhal's statement that,

> " '[w]hile identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart—the 'integrity'—of the adversary process.
>
> " 'Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification—including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi.' " 432 U. S., at 114, n. 14, quoting *Clemons* v. *United States*, 133 U. S. App. D. C. 27, 48, 408 F. 2d 1230, 1251 (1968) (concurring opinion) (footnote omitted).

The petitioners argue, however, that cross-examination is inadequate in cases such as these. They assert that the presence of the jury deterred their lawyers from cross-examining the witnesses vigorously and fully as to the possible improprieties of the pretrial identifications in these cases. The petitioners point to no specific instances in the trial when their counsel were thus deterred, and the record reveals that the cross-examination on the identity issues was, if not always effective, both active and extended. Nonetheless, the petitioners rely on a passage from *United States* v. *Wade, supra,* which referred to

> "the predicament in which Wade's counsel found himself—realizing that possible unfairness at the lineup may be the sole means of attack upon the unequivocal courtroom identification, and having to probe in the dark in an attempt to discover and reveal unfairness, while bolstering the government witness' courtroom identification by bringing out and dwelling upon his prior identification." 388 U. S., at 240–241.

The petitioners, however, attribute undue significance to this passage. The "predicament" described in *Wade* was no

more than part of the Court's demonstration that, if identification stemming from an improperly conducted lineup was to be excluded, a courtroom identification based on such a lineup logically had to be excluded as well.

A "predicament," if one chooses to call it that, is always presented when a lawyer decides on cross-examination to ask a question that may produce an answer unfavorable to his client. Yet, under our adversary system of justice, cross-examination has always been considered a most effective way to ascertain truth.[4] We decline in these cases to hold that the Due Process Clause of the Fourteenth Amendment inevitably requires the abandonment of the time-honored process of cross-examination as the device best suited to determine the trustworthiness of testimonial evidence.

A judicial determination outside the presence of the jury of the admissibility of identification evidence may often be advisable. In some circumstances, not presented here, such a determination may be constitutionally necessary. But it does not follow that the Constitution requires a *per se* rule compelling such a procedure in every case.

Accordingly, the judgments are

*Affirmed.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

The Court holds that the Due Process Clause of the Fourteenth Amendment did not require that the trial judge in each of the instant cases hold a "fair hearing," *Jackson* v. *Denno,* 378 U. S. 368, 377 (1964), to decide the admissibility of eyewitness identification evidence, and that a remand is not now required to accord such a hearing. While freely conceding that a "judicial determination outside the presence of the

---

[4] As Professor Wigmore put it, "[cross-examination] is beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 J. Wigmore, Evidence § 1367 (Chadbourn rev. 1974).

jury of the admissibility of identification evidence may often be advisable [and i]n some circumstances . . . constitutionally necessary," *ante,* at 349, the Court holds that the Constitution does not require "a *per se* rule compelling such a procedure in every case," *ibid.* I dissent. In my view, the Due Process Clause mandates such a hearing whenever a defendant, as both petitioners did at their respective trials below, has proffered some evidence that pretrial police procedures directed at identification were impermissibly suggestive. The flaw in the Court's reasoning lies in its statement that identification evidence does not implicate the "special considerations" on which *Jackson* v. *Denno* relied to "justify a departure from the presumption that juries will follow instructions." *Ante,* at 347. Surely jury instructions can ordinarily no more cure the erroneous admission of powerful identification evidence than they can cure the erroneous admission of a confession. Accordingly, the separate judicial determination of admissibility required by *Jackson* for confessions is equally applicable for eyewitness identification evidence. Because the record before us is inadequate to conclude that in each case the identification evidence was properly admitted, see *Jackson* v. *Denno, supra,* at 376–377, I would remand these cases for further proceedings.

At least since *United States* v. *Wade,* 388 U. S. 218 (1967), the Court has recognized the inherently suspect qualities of eyewitness identification evidence.[1] Two particular attributes of such evidence have significance for the instant cases. First, eyewitness identification evidence is notoriously unreliable:

> "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances

---

[1] The special nature of eyewitness identification evidence has produced an enormous reservoir of scholarly writings, many based on solid empirical research. For a bibliography of that literature, see E. Loftus, Eyewitness Testimony 237–247 (1979).

of mistaken identification. Mr. Justice Frankfurter once said: 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent—not due to the brutalities of ancient criminal procedure.' The Case of Sacco and Vanzetti 30 (1927)." *Id.,* at 228 (footnote omitted).

*Manson* v. *Brathwaite,* 432 U. S. 98, 111–112 (1977), emphasized this troublesome characteristic of such evidence:

"The driving force behind *United States* v. *Wade,* 388 U. S. 218 (1967), *Gilbert* v. *California,* 388 U. S. 263 (1967) (right to counsel at a post-indictment lineup), and *Stovall,* all decided on the same day, was the Court's concern with the problems of eyewitness identification. Usually the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional stress. The witness' recollection of the stranger can be distorted easily by the circumstances or by later actions of the police."

Accordingly, to guard against the "dangers inherent in eyewitness identification," *United States* v. *Wade, supra,* at 235, the Court has required the presence of counsel at postindictment lineups, 388 U. S., at 236–237,[2] and has held inadmissible identification evidence tainted by suggestive confrontation procedures and lacking adequate indicia of reliability,

---

[2] "[S]uggestibility inherent in the context of the pretrial identification" is a factor that has led the Court to require the presence of counsel at postindictment lineups. *United States* v. *Wade,* 388 U. S., at 235. If counsel is not present at such a lineup, the identification may not be introduced into evidence at trial and an in-court identification may be made only if the prosecutor establishes "by clear and convincing evidence that the in-court identification [was] based upon observatio[n] . . . of the suspect other than the lineup identification." *Id.,* at 240.

*Manson* v. *Brathwaite, supra,* at 114. "Thus, *Wade* and its companion cases reflect the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability." 432 U. S., at 112. An important thrust of our eyewitness identification evidence cases from *Wade* to *Manson,* therefore, has been to prevent impairment of the jury's decisionmaking process by the introduction of unreliable identification evidence.

Second, despite its inherent unreliability, much eyewitness identification evidence has a powerful impact on juries. Juries seem most receptive to, and not inclined to discredit, testimony of a witness who states that he saw the defendant commit the crime.[3]

> "[E]yewitness testimony is likely to be believed by jurors, especially when it is offered with a high level of confidence, even though the accuracy of an eyewitness and the confidence of that witness may not be related to one another at all. All the evidence points rather strikingly to the conclusion that there is almost *nothing more convincing* than a live human being who takes the stand, points a finger at the defendant, and says 'That's the one!' "[4]

The powerful impact that much eyewitness identification evidence has on juries, regardless of its reliability,[5] virtually

---

[3] "[J]uries unfortunately are often unduly receptive to [identification] evidence . . . ." *Manson* v. *Brathwaite,* 432 U. S. 98, 120 (1977) (MARSHALL, J., dissenting) (footnote omitted). See Loftus, *supra,* at 8–19; P. Wall, Eye-witness Identification in Criminal Cases 19–23 (1965); Hammelmann & Williams, Identification Parades—II, 1963 Crim. L. Rev. 545, 550. See generally A. Yarmey, The Psychology of Eyewitness Testimony (1979).

[4] Loftus, *supra,* at 19 (emphasis supplied). Professor Loftus exhaustively canvasses statistical and psychological evidence which persuasively supports her conclusion that eyewitness identification evidence is "overwhelmingly influential." *Id.,* at 9.

[5] Professor Loftus, *ibid.* (emphasis in original), observes that "[j]urors

mandates that, when such evidence is inadmissible, the jury should know nothing about the evidence. See *Manson* v. *Brathwaite, supra,* at 112. For certainly the resulting prejudice to the defendant cannot be erased by jury instructions. See generally E. Loftus, Eyewitness Testimony 189–190 (1979); P. Devlin, Report to the Secretary of State for the Home Department of the Departmental Committee on Evidence of Identification in Criminal Cases 149–150 (1976). The Court's contrary conclusion cavalierly dismisses the inherent unreliability of identification evidence and its effect on juries—two attributes of confession evidence that led the Court to mandate a "fair hearing" safeguard in *Jackson* v. *Denno.*

Any purported distinction between the instant cases and *Jackson* is plainly specious. In *Jackson,* this Court invalidated a New York State procedure whereby the jury was instructed first to determine the voluntariness of a defendant's confession [6] and then to disregard the confession if it concluded that the confession was involuntary. *Jackson* struck down this practice and required first that the voluntariness

have been known to accept eyewitness testimony pointing to guilt even when it is *far* outweighed by evidence of innocence."

Wall, *supra,* at 19 (footnotes omitted) (emphasis supplied), concludes: "[J]uries are unduly receptive to identification evidence and are not sufficiently aware of its dangers. It has been said that 'positive recognition by well intended uninterested persons is commonly accepted unless the alibi is convincing,' and that evidence of identification, *however untrustworthy,* is 'taken by the average juryman as absolute proof.'"

[6] Distinguishing *Jackson* from the instant cases on the basis that the jury there was first instructed to determine voluntariness is not persuasive. That consideration goes to the weight given the evidence by the jury. *Jackson* itself recognized that the lingering effect of the involuntary confession might be decisive in the jury's deliberations. Such an effect is no less likely to be decisive in the case of powerful eyewitness identification evidence that a jury has been instructed to ignore. In both instances, peculiarly powerful evidence must leave an indelible impact on a juror's mind. See n. 7, *infra.*

of a confession be determined by the judge before its admission in evidence, and second that the jury not be allowed to consider an inadmissible confession. *Jackson* refused to rely on the curative effect of jury instructions where the trial judge had not applied " 'the exclusionary rules before permitting evidence to be submitted to the jury.' " 378 U. S., at 382, n. 10, quoting Meltzer, Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury, 21 U. Chi. L. Rev. 317, 327 (1954).[7]

For purposes of the instant cases, three factors central to our decision in *Jackson* are apposite. First, *Jackson* stated, as the Court today notes, *ante,* at 347, "that the Fourteenth Amendment forbids the use of involuntary confessions . . . because of the probable unreliability of confessions that are obtained in a manner deemed coercive." 378 U. S., at 385–386. Second, *Jackson* stated, as the Court today further notes, *ante,* at 347, that involuntary confessions are inadmissible "because of the 'strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will.' " 378 U. S., at 386.[8] Third, because of the sensitive nature of confession

---

[7] The Court in *Jackson* noted:

" 'Due Process of law requires that a coerced confession be excluded from consideration by the jury. It also requires that the issue of coercion be tried by an unprejudiced trier, and, regardless of the pious fictions indulged by the courts, it is useless to contend that a juror who has heard the confession can be uninfluenced by his opinion as to the truth or falsity of it. . . . And the rule of exclusion ought not to be emasculated by admitting the evidence and giving to the jury an instruction which, as every judge and lawyer knows, cannot be obeyed.' " 378 U. S., at 382–383, n. 10, quoting E. Morgan, Some Problems of Proof Under the Anglo-American System of Litigation 104–105 (1956).

[8] Of course, police misbehavior is not always so lacking in subtlety that involuntary confessions are invariably wrenched from an accused by force. Thus, indirect methods of interrogation which seek to elicit a statement

evidence, *Jackson* found that instructions were not adequate to assure that the jury would ignore involuntary confession evidence:

> "Under the New York procedure, the fact of a defendant's confession is solidly implanted in the jury's mind, for it has not only heard the confession, but it has also been instructed to consider and judge its voluntariness and is in position to assess whether it is true or false.[9] If it finds the confession involuntary, does the jury—indeed, can it—then disregard the confession in accordance with its instructions? If there are lingering doubts about the sufficiency of the other evidence, does the jury unconsciously lay them to rest by resort to the confession? Will uncertainty about the sufficiency of the other evidence to prove guilt beyond a reasonable doubt actually result in acquittal when the jury knows the defendant has given a truthful confession." *Id.,* at 388 (footnote omitted).

Similar considerations plainly require a hearing in the case of identification evidence. First, there can be little doubt that identification evidence is as potentially unreliable as confession evidence. See *supra,* at 350–352. Second, suggestive confrontation procedures which, in the totality of the circumstances, create " 'a very substantial likelihood of irreparable misidentification,' " *Manson* v. *Brathwaite,* 432 U. S., at 116, quoting *Simmons* v. *United States,* 390 U. S. 377, 384 (1968), are as impermissible a police practice as the securing of a custodial confession determined, in the totality of the circumstances, to be involuntary, see *United States* v. *Washington,* 431 U. S. 181, 188 (1977); cf. *North Carolina* v. *Butler,*

from a custodial suspect may also warrant a conclusion of involuntariness. See *Rhode Island* v. *Innis,* 446 U. S. 291, 301 (1980) (interrogation includes actions which "the police should know are reasonably likely to elicit an incriminating response"); cf. *Brewer* v. *Williams,* 430 U. S. 387 (1977) (Sixth Amendment violation).

[9] See n. 6, *supra.*

441 U. S. 369, 374–375 (1979) (waiver). See also *Manson* v. *Brathwaite, supra,* at 112; *Foster* v. *California,* 394 U. S. 440, 442–443 (1969); *United States* v. *Wade,* 388 U. S., at 228–229, 232–235; *Stovall* v. *Denno,* 388 U. S. 293, 302 (1967). And third, because of the extraordinary impact of much eyewitness identification evidence, juries hearing such evidence will be no more able fully to ignore it upon instruction of the trial judge than will juries hearing confession evidence.[10] To expect a jury to engage in the collective mental gymnastic of segregating and ignoring such testimony upon instruction is utterly unrealistic. The Court's bald assertion, therefore, that jury instructions are adequate to protect the accused, is as untrue for identification evidence as it is for involuntary confessions.

Nor can it be assumed, as the Court has, that cross-examination will protect the accused in this circumstance. That is no more true here than it was in *Jackson,* where the defendant was also allowed to cross-examine on the question of voluntariness. Cross-examination, of course, affects the weight and credibility given by the jury to evidence,[11] but cross-examination is both an ineffective and a wrong tool for purging inadmissible identification evidence from the jurors' minds. It is an ineffective tool because all of the scientific

---

[10] In both of these cases, the eyewitnesses were also the victims of the crimes. Not only does that dual status affect the reliability of the identification, but it also is likely to make the testimony more powerful and thus less curable by jury instructions. Clearly, this is not a case where 14 reliable identifications were properly received in evidence, but a 15th by a nonvictim witness was subject to suggestive confrontation procedures and was unreliable, thereby raising the possibility that the error was harmless beyond a reasonable doubt.

[11] In *Manson* v. *Brathwaite,* 432 U. S., at 116, the Court stated:

"We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."

evidence suggests that much eyewitness identification testimony has an unduly powerful effect on jurors. Thus, the jury is likely to give the erroneously admitted evidence substantial weight, however skillful the cross-examination. See generally E. Loftus, Eyewitness Testimony 9 (1979). Cross-examination is also a wrong tool in the sense that jury instructions are the means normally employed to cure the erroneous introduction of evidence. At best, cross-examination might diminish the weight the jury accords to the admissible evidence. The likelihood is, however, that the jury would continue to give the improperly admitted evidence substantial weight, even if properly instructed to disregard it.

It is clear beyond peradventure, I submit, that because of the dangers to a just result inherent in identification evidence—its unreliability and its unusual impact on the jury—a "fair hearing and a reliable determination" of admissibility, *Jackson* v. *Denno,* 378 U. S., at 377, are constitutionally mandated. The Due Process Clause obviously precludes the jury from convicting on unreliable identification evidence. *Manson* v. *Brathwaite, supra.*[12] But the only way to be sure that the jury will not rest its verdict on improper identification evidence, as a practical matter, is by not permitting the jury to hear it in the first place. A *Jackson* v. *Denno* hearing would expediently accomplish that purpose.[13] I believe that the Due Process Clause requires no less.

---

[12] In *Jackson* v. *Denno,* the Court was concerned that the jury not hear a defendant's confession until a trial judge had made a preliminary determination of voluntariness. The Court assumed that were this not done, a deleterious impact on the jury's deliberations would operate:

"[I]t is only a reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant and which would permit the jury to consider the confession in adjudicating guilt or innocence." 378 U. S., at 387.

[13] The Court errs in any event in deciding these cases on the premise that petitioners request a *per se* rule requiring a hearing out of the jury's presence in every case. In the first place, petitioners rely substantially

A large and distinguished group shares my view. The lower federal courts with virtual unanimity have encouraged the type of hearing sought by petitioners.[14] As already noted,

on authority which does not go that far. Brief for Petitioners 43–45. Clearly, they have sought reversal of their convictions on the basis that they were entitled to such a hearing. Moreover, there is no question here that they raised a colorable claim that the confrontation procedures were impermissibly suggestive. See, e. g., United States ex rel. Fisher v. Driber, 546 F. 2d 18, 22 (CA3 1976); United States v. Cranson, 453 F. 2d 123, 127 (CA4 1971), cert. denied, 406 U. S. 909 (1972).

If the Court's result is out of concern for not adding another layer of complexity to criminal litigation, that is understandable, but not sufficient to supplant an accused's constitutional right. Moreover, a rule requiring the defendant to proffer some minimum quantum of evidence showing the suggestiveness of the confrontation procedures would eliminate frivolous requests. See, e. g., United States ex rel. Fisher v. Driber, supra, at 22.

[14] United States ex rel. Fisher v. Driber, supra, at 22 (requiring hearing outside presence of jury where motion for such hearing is not frivolous); United States v. Smith, 546 F. 2d 1275, 1279 (CA5 1977) (evidentiary hearing not required where no critical facts in dispute); United States v. Mitchell, 540 F. 2d 1163, 1166 (CA3 1976) (defendant could have "requested a hearing outside the presence of the jury in accordance with Neil v. Biggers"), cert. denied, 429 U. S. 1099 (1977); Nassar v. Vinzant, 519 F. 2d 798, 802, n. 4 (CA1) (commending hearing out of jury's presence), cert. denied, 423 U. S. 898 (1975); United States v. Cranson, supra, at 125–126 ("evidentiary hearing outside the jury's presence is required" upon motion to suppress); Haskins v. United States, 433 F. 2d 836, 838 (CA10 1970) (requiring hearing outside of jury's presence); United States v. Ranciglio, 429 F. 2d 228, 230 (CA8) ("trial court, out of the hearing and presence of the jury, conducted a hearing as required in Wade"), cert. denied, 400 U. S. 959 (1970); United States ex rel. Phipps v. Follette, 428 F. 2d 912, 913, n. 1 (CA2) ("commend[ing] . . . practice" of hearing out of jury's presence), cert. denied, 400 U. S. 908 (1970); United States v. Allison, 414 F. 2d 407, 410 (CA9) (requiring hearing outside of jury's presence), cert. denied, 396 U. S. 968 (1969); United States v. Broadhead, 413 F. 2d 1351, 1359 (CA7 1969) (pretrial hearing approved), cert. denied, 396 U. S. 1017 (1970); Clemons v. United States, 133 U. S. App. D. C. 27, 34, 408 F. 2d 1230, 1237 (1968) (en banc) (requiring hearing outside of jury's presence or disclosure of prosecutor's evidence), cert. denied, 394 U. S. 964 (1969). Even the Court of Appeals deciding these cases stated that it had "no

the Court too states that "[a] judicial determination outside the presence of the jury of the admissibility of identification evidence may often be advisable [and i]n some circumstances . . . constitutionally necessary." *Ante*, at 349. I should think it follows from this congruence of opinion on the desirability of such a judicial hearing that evolving standards of justice [15] mandate such a hearing whenever a defendant proffers sufficient evidence to raise a colorable claim that police confrontation procedures were impermissibly suggestive. See, *e. g., United States ex rel. Fisher* v. *Driber*, 546 F. 2d 18, 22 (CA3 1976).

In the instant cases, the suggestiveness of the confrontation procedures was clearly shown, and equally clearly cross-examination in front of the jury was inadequate to test the reliability of the evidence because of the undoubted inhibiting effect on cross-examination from fear that rigorous questioning of hostile witnesses would strengthen the eyewitnesses' testimony and impress it upon the jury. See *United States* v. *Wade*, 388 U. S., at 240–241.[16] In any event, the record

---

doubt that" a hearing out of the jury's presence "is the preferable procedure." *Summitt* v. *Bordenkircher*, 608 F. 2d 247, 250 (CA6 1979).

In addition, the Commonwealth of Kentucky, where petitioners were tried and convicted, appears to require a hearing out of the presence of the jury, upon defendant's motion, for confession and for search evidence. See Ky. Rule Crim. Proc. 9.78. In addition, *Moore* v. *Commonwealth*, 569 S. W. 2d 150, 153 (Ky. 1978), decided after petitioners were convicted, held that the trial court's refusal to hold a suppression hearing to determine the admissibility of identification evidence constituted error. Previous Kentucky appellate decisions had reached a similar conclusion. *E. g., Francis* v. *Commonwealth*, 468 S. W. 2d 287 (App. 1971).

[15] See, *e. g., Harper* v. *Virginia Board of Elections*, 383 U. S. 663, 669 (1966) (equal protection); *Trop* v. *Dulles*, 356 U. S. 86, 100–101 (1958) (plurality opinion of Warren, C. J.) (Eighth Amendment).

[16] It is no answer to say, as the Court does, that the record does not reflect that petitioners' respective counsel were deterred by the presence of the jury, for the simple reason that a cold record cannot reflect questions not asked.

is inadequate to decide that petitioners could not have succeeded in foreclosing admission of the evidence if they had been afforded a hearing out of the jury's presence in the first place. Accordingly, I would remand for such further proceedings as are necessary to give these petitioners "a fair hearing and a reliable determination," *Jackson* v. *Denno,* 378 U. S., at 377, that the identification evidence in each trial was not erroneously admitted.