UNITED STATES of America

v.

Mutulu SHAKUR, a/k/a "Doc," a/k/a "Jeral Wayne Williams," Sekou Odinga, a/k/a "Nathaniel Burns," a/k/a "Mgabasi," a/k/a "Mugubasi," a/k/a "Eddie Holmes," a/k/a "Lou," Cecil Ferguson, a/k/a "Mo," a/k/a "Chui," Edward Lawrence Joseph, a/k/a "Edward Lawrence," a/k/a "Jamal," a/k/a "Tony," a/k/a "J.R.," William Johnson, a/k/a "Bilal Sunni-Ali," a/k/a "Spirit," Silvia Baraldini, a/k/a "Louise," Susan Rosenberg, a/k/a "Elizabeth," Cheri Dalton, a/k/a "Nahanda," Iliana Robinson, a/k/a "Naomi," Nilse Cobeo, a/k/a "Nilse Lawrence," a/k/a "Ginger," a/k/a "Gigi," a/k/a "Giovanni Correa," and Alan Berkman, Defendants.

No. SSS 82 Cr. 0312 (KTD).

United States District Court,
S.D. New York.

March 31, 1983.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for the Government; Robert S. Litt, Stacey J. Moritz, Asst. U.S. Attys., New York City, of counsel.

Jesse Berman, New York City, for defendant Cecil Ferguson.

William Mogulescu, New York City, for defendant Edward Joseph.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendants Ferguson and Joseph move to suppress all pretrial and in-court identification testimony concerning the defendants. Alternatively, they move for a hearing to determine the suggestiveness of all identification procedures. These identification procedures included both photographic show-ups and a court-ordered lineup. Only four witnesses are involved in this identification question.[1] Of these four, two that identified defendant Ferguson in the lineup also identified him previously in a photographic "lineup." Neither of the witnesses that identified Joseph at the lineup had

---

1. If any other witnesses are involved in this identification process, such as Kamau Bayette, the following discussion where relevant also is applicable to them.

ever been shown a photographic show-up. Therefore, the discussion below concerning photographic "show-ups" applies only to Ferguson; the lineup discussion applies to both defendants.

### (1) Photographic Show-ups

In determining the admissability of pretrial photographic show-up identification testimony, I must examine whether "the photographic procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The government has provided affidavits describing the events surrounding each of the witnesses' identification. The first witness, labelled W–2, identified Ferguson from a photospread, a copy of which is attached as Exhibit C to Federal Bureau of Investigation ("FBI") Agent Cordier's affidavit. According to Assistant United States Attorney ("AUSA") Moritz, the photospread was shown by Lieutenant Human of the Nyack Police Department to W–2 on March 2, 1982. *See* AUSA Moritz Affidavit at 1–2. The arrangement and composition of this photospread appears to fall far short of being "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." [2] However, part of the show-up is the method by which Lieutenant Human showed the photospread to W–2. AUSA Moritz's affidavit, based on information related to her by Human, sets forth the circumstances surrounding the show-up:

> Lieutenant Human further informed me that he displayed the photographs to W–2 after saying, in substance, that evidence had been developed with respect to additional suspects and that therefore W–2 (who had previously been shown photospreads of other suspects) was being asked

to view additional photographic arrays. Lieutenant Human then said to W–2 that if W–2 recognized any individual as having been involved in the October 20 incident, to point him out. Finally, Lieutenant Human told me that he did not tell W–2 whether or not W–2 had identified a defendant and, further, he did not suggest to W–2 in any way that W–2 should pick out a particular person.

AUSA Moritz Affidavit at 1–2.

Under any interpretation of these circumstances, Ferguson has failed to demonstrate a violation of the *Simmons* standard enunciated above. To ensure the veracity of the described circumstances, however, a *voir dire* will be permitted outside the hearing of the jury prior to W–2's formal identification of the defendant.[3] *See Watkins v. Sowders,* 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981).

The second photospread was shown to witness W–1 by FBI Agent Michael Falcone on July 8, 1982. Falcone described the circumstances as follows:

> Before showing any photographic array to W–1, I told W–1 not to assume that any photograph of any individuals whom W–1 saw on October 20, 1981 was included in the photographic array. I further told W–1 that W–1 should simply look at the photographic array and state whether or not W–1 recognized any individual in it. W–1 looked at a six-photograph array containing the defendant CECIL FERGUSON'S picture and identified the picture of FERGUSON as a person W–1 saw involved in the events of October 20, 1981.

Falcone Affidavit at 2. Again, this photospread appears non-suggestive. The circumstances, as described, do not warrant a hearing. Again, however, I will permit a *voir dire* outside the hearing of the jury

---

**2.** Ferguson argues that the photospread was unduly suggestive because he was the only one in the photographs with a "noticeably receding hairline." This singular complaint is neither weighty nor adequate.

**3.** The government would do well to have Lieutenant Human available on short notice should it become necessary.

prior to W–1's formal identification of the defendant.[4]

### (2) Lineup

A lineup was conducted pursuant to court order by the United States Attorney's Office. It took place at 5:00 p.m. in the New York City Police Department, One Police Plaza, Special Investigative Division Room, 12th Floor, New York, New York. A court reporter recorded much of the procedure. I will discuss only some of the particularly pertinent aspects of the lineup. A more complete description can be found in the complete transcript.

Before viewing any lineup, the witnesses were grouped together in one room. A transcript of United States Attorney John Martin's statement to the group was provided to defense counsel and to the court. The witnesses then were taken one at a time to view the six person lineup through a one-way mirror. The witnesses generally said nothing at the viewing. Next they were taken to a room separate from the witnesses who had yet to view the lineup and out of sight and hearing of defense counsel. The witnesses, I assume, were asked whether they recognized anyone in the lineup. Neither defense counsel nor the court received the transcript of these interviews.

All of the witnesses first viewed the Joseph lineup; then at approximately 10:30 p.m., the witnesses viewed the Ferguson lineup. Seventeen witnesses viewed a six person lineup in which Joseph was one of the individuals. Three identified Joseph, though one of the three subsequently withdrew his or her identification. Eleven individuals failed to identify any member of the array, and three individuals identified a

stand-in or stand-ins. Cordier Affidavit at 3. Thirteen individuals viewed the Ferguson lineup. Two persons identified Ferguson; six people failed to identify anyone in the array; and five persons identified a stand-in or stand-ins. *Id.*

■ Defendants argue that the lineup was impermissibly suggestive.[5] Some of their objections to the lineup are applicable to both defendants, and some apply only to each defendant individually. I will address each of the three groups of objections *seriatim.*

#### A. Common Objections

Defendants objected to: (i) all of the witnesses being together before the witnesses viewed the lineup; (ii) the witnesses having to wait over five to six hours before the start of the Ferguson lineup, (iii) the witnesses being placed together after they had viewed the Joseph lineup, but before the Ferguson lineup; and (iv) the government's refusal to conduct a lineup first with neither defendant in it.

United States Attorney John Martin stated to the group of witnesses prior to any lineup viewing, *inter alia:*

> In general you will be asked to view two separate groups of individuals. The fact that you are asked to view a group of individuals should in no way be considered by you as indicating that any of those individuals is a person that you may have observed on October 20th, 1981.
>
> \* \* \* \* \* \*
>
> As I am sure you all know, it is very important that you not discuss this case with each other. And if you, after the lineup, [sic] you do or do not recognize any of the individuals in the lineup it is

---

4. *See supra* note 3.

5. In determining the admissibility of identification testimony "reliability is the linchpin." *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Reliability is determined by the "totality of the circumstances." *See generally id.* at 104–14, 97 S.Ct. at 2247–53.

> [T]he factors to be considered in evaluating the likelihood of misidentification include the

opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

very important that you not discuss that fact with any other witness.

\* \* \* \* \* \*

I do urge you again that it is very important that you do not discuss this case with each other, and what you may have observed on October 20th, and particularly important, do not discuss with anyone else whether you have identified anybody you observe this evening or at any other time.

*See* Defendants' Notice of Motion, Exhibit V at 5, 7 & 8.

■ In fact, because two witnesses arrived late, Martin repeated these statements a second time. Therefore, though perhaps I would not have grouped the witnesses together as was done here, I do not find defendants' objections rendered the lineup identifications impermissibly suggestive. Their objections were met sufficiently by Martin's cautionary instructions.

### B. Joseph's Objections

Joseph argues that the following facts rendered the lineup impermissibly suggestive: the relative complexion of the black males was too extreme; the defendant had the least amount of facial hair, with no hair under his lower lip like the five stand-ins, and a much lighter mustache; and two of the stand-ins were much shorter.

■ I have viewed photographs of the lineups. Joseph argues that the relative differences in skin complexion did not come out in the polaroid snap shots. For the purposes of this motion, I will accept as true his assertions as articulated on the transcript of the lineup proceeding. Nonetheless, I find there was little if any suggestiveness at all in the manner and composition of the lineup. As the Second Circuit has stated in reference to photographic showups:

> The due process clause does not require law enforcement officers to scour about for a selection of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility. *Cf.*

*United States v. Harrington,* 490 F.2d 487, 494–95 (2d Cir.1973). In light of this holding, we need not reach the question of reliability.

*United States v. Bubar,* 567 F.2d 192, 199 (2d Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977). Similarly, the stand-ins and Joseph were sufficiently similar and their presentation to the witnesses were adequately neutral for the purposes of the due process clause.

■ Part of the identification, however, has not been revealed. This concerns the actual interview and potential identification statements made by each person after viewing the lineup. In order to ensure that no suggestiveness intruded into this phase of the witnesses' identification, the government is ordered to submit for *in camera* review a transcript of the interviews of the two witnesses who identified Joseph.

### C. Ferguson's Objections

Ferguson argues that the following facts rendered the lineup impermissibly suggestive: (1) in profile the fake beards worn by some of the stand-ins are obvious and, (2) all stand-ins were younger than the defendant.

■ I have examined the photographs taken of the Ferguson lineup and I am unable to determine which stand-ins have fake beards. In fact, Ferguson's beard looks somewhat unreal. Moreover, I have carefully scrutinized the photographs attempting to discern which beards are fake. A witness would not be so intent on determining this fact. In addition, the ages as disclosed in the transcript were quite close. This is reflected in the photographs; it is not clear from the photographs that Ferguson is the oldest. Thus, neither of these factors renders the lineup unduly suggestive.

Ferguson, however, raises one more claim. He notes that the witnesses that identified him in the lineup also had viewed and identified him previously in photographic show-ups. *See supra* section (1). The result, defendant maintains is that

> the witnesses were asked to pick someone out of a lineup when they had previously

on several occasions viewed the photographs of the defendants but had never seen a photograph of the stand-ins. The cumulative viewing of the defendants' photographs had to affect the reliability of any of the identifications made at the lineup whether or not any particular witness had previously made an identification from a photograph.

Defendants' Notice of Motion at 8.

The defendant's claim is not insubstantial. The implications of his assertion, however, are troublesome. It suggests that witnesses that previously have examined photographic displays involving the accused would be prohibited from participating in a defense counsel-supervised lineup. This seems unnecessary when the prior photographic show-up was not suggestive. *See Sales v. Harris,* 675 F.2d 532, 538 (2d Cir. 1982) ("As to the temporal proximity of the photo viewing to the lineup, regardless of whether the photospread preceded the lineup by 24 hours . . . or by ten weeks . . . it is unlikely that the lineup was tainted since the prior photo procedures had not been suggestive."). Therefore, I find that the *voir dire* permitted outside the hearing of the jury can determine adequately the extent of any suggestiveness in the photographic display. If this questioning requires a reconsideration of the admissibility of the lineup or subsequent in-court identifications, I will address the issue at that time. Again, the government is directed to submit for *in camera* review, a transcript of the government's post lineup interview of witnesses W–1 and W–2.

In sum, defendants' motion to suppress identification testimony or for a hearing is denied. Any questions regarding the reliability of the photo show-up or the lineup can be addressed through a *voir dire* of the witness outside the hearing of the jury, before the defendant is formally identified.

SO ORDERED.