PER CURIAM:*
Defendant-Appellant Anthony Shaffer appeals his' criminal conviction on the ground that his Fifth Amendment right to due process was violated when the trial court admitted in-court witness identifications that were influenced by impermissi-bly suggestive pretrial procedures. The Government concedes that the admission of the in-court identifications was constitutional error but argues that the conviction should be affirmed because the error was harmless. Because we are not convinced that the error was harmless beyond a reasonable doubt, we reverse.
I. FACTUAL BACKGROUND
On December 11,2013, surveillance cameras recorded a man, armed with a gun, rob the Wal-Mart branch of Woodforest National Bank in Pearland, Texas. The relevant footage shows a man approach the bank teller’s desk and receive a withdrawal slip from the teller. The man briefly writes on the slip and then pulls a gun from his waistband. According to the teller, he then demanded the “loose hundreds.” After she gave him the money in her teller drawer, the man walked to the adjacent teller and robbed her at gunpoint.
The Wal-Mart’s external cameras captured the car used by the robber. Based on *701 the license plate of this vehicle, the Pear-land Police Department focused their investigation on Trevian Robinson. Police searched Robinson’s home where they found a sweater, sweatpants, and a gun that appeared similar to those in the surveillance video. Robinson conceded that the clothes and gun belonged to him but told the police that he had been with his cousin, Anthony Shaffer, the afternoon of the robbery and that Shaffer had asked for a ride to the Wal-Mart where the robbery took place. After looking at still photographs from the surveillance footage, Robinson said that the man who robbed the bank looked like Shaffer.
At the scene of the crime, police recovered the withdrawal slip upon which the robber wrote a demand note. From this slip, police were able to recover latent fingertip prints. Shaffer was fingerprinted and two law enforcement officers testified at trial that a fingerprint on the withdrawal slip matched Shaffer’s fingertip print.
The day after the robbery, the two bank tellers who had been present when the robbery occurred, A.L. and C.M., were shown a photographic array that included Shaffer’s driver’s license photograph. Neither identified Shaffer. At trial, however, both A.L. and C.M. positively identified Shaffer as the robber. On cross-examination, both A.L. and C.M. testified that prior to trial, the prosecutors had shown them still photographs from the surveillance video, told them Shaffer’s name, and said that he had been charged with the crime. C.M. also testified that prior to the trial, she had been brought to the courtroom while Shaffer was present and asked if she recognized anyone. After each admission, Shaffer’s attorney objected on the ground that the in-court identification should be barred because it was influenced by impermissibly suggestive pretrial identification procedures and moved for a mistrial. The court overruled the objections and denied the motions for a mistrial.
Robinson testified at trial that Shaffer had asked for a ride to the Pearland Wal-Mart on the day the robbery occurred but that Shaffer did not say why he wanted to go. Robinson stated that he drove Shaffer to the Wal-Mart and stayed in the car while Shaffer went inside. Prosecutors showed Robinson the surveillance video, and Robinson identified the clothes the robber was wearing as belonging to him, as well as admitted his gun had been used in the robbery. He also said that the man in the video was Shaffer. Shaffer’s counsel argued in his closing that Robinson was the bank robber.
In its closing arguments, while the Government acknowledged that Robinson may have played a role in the crime, suggesting he may have been the getaway driver, it asserted that the evidence convincingly established that Shaffer was the one who robbed- the bank. The Government repeatedly emphasized the fact that both of the bank tellers had positively identified Shaffer as the robber. Specifically, the Government told the jury that: “[W]hat really convicts him and should convince you is that both [A.L.] and [C.M.] both positively identified him for you here in this courtroom.”
At the conclusion of the trial, the jury' found Shaffer guilty on both counts charged in the superseding indictment: bank robbery in violation of 18 U.S.C. § 2113(a) and (b) and brandishing a firearm in the commission of a crime in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Shaffer was sentenced to a total of 162 months .imprisonment and ordered to pay restitution.-
II. STANDARD OF REVIEW
Because the Government concedes that the admission of A.L. and C.ÍVL’s in-court *702 identifications was constitutional error, see, e.g., United States v. Cueto, 611 F.2d 1056, 1064-65 (5th Cir. 1980), we need only address whether this error was harmless beyond a reasonable doubt, see United States v. Wright, 777 F.3d 769, 777 (5th Cir.), cert. denied, — U.S. —, 135 S.Ct. 2821, 192 L.Ed.2d 860 (2015). A constitutional error is harmless if “there was [no] reasonable possibility that the evidence complained of might have contributed to the conviction.” United States v. Alvarado-Valdez, 521 F.3d 337, 341 (5th Cir. 2008) (alteration in original) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). “The government bears the burden of establishing the error is harmless beyond a reasonable doubt.” United States v. Jackson, 636 F.3d 687, 697 (5th Cir. 2011) (quoting Alvarado-Valdez, 521 F.3d at 341).
“In determining whether an error is harmless we look to the totality of circumstances including all of the evidence adduced.” United States v. Watkins, 741 F.2d 692, 695 (5th Cir. 1984). “A court must then decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt.” Id. (quoting Harryman v. Estelle, 616 F.2d 870, 876 (5th Cir. 1980) (en banc)). “[T]his is an exacting standard that must be uncompromisingly applied.” Harryman, 616 F.2d at 876.
III. DISCUSSION
While the Government acknowledges that the admission of A.L. and C.M.’s in-court identifications was unconstitutional, we are compelled to note the significant role this evidence had at trial. The central dispute was the identity of the robber. A.L. and C.M. were the only two eyewitnesses to the crime that testified, and they both stated that Shaffer was the robber. “[EJyewitness identification evidence has a powerful impact on juries.” Watkins v. Sowders, 449 U.S. 341, 352, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) (Brennan, J., dissenting); see also United States v. Rogers, 126 F.3d 655, 660 (5th Cir. 1997) (noting that “in-court identifications can be powerfully persuasive”). Notably, the Government focused on'this evidence in its closing argument, stating that “what really convicts him and should convince you is that both [A.L.] and [C.M.] both positively identified [Shaffer] for you here in this courtroom.” As the Government emphasized, while A.L.’s testimony “by itself would be enough to convict [Shaffer,] ... [w]e went further than that” as C.M. “also identified him.” Because the Government repeatedly stated that the in-court identifications were conclusive proof that Shaffer was the robber, “[t]here is no way to determine whether the jury would have convicted [the defendant] purely on the basis of [the tainted] testimony or of any of the other evidence.” Jackson, 636 F.3d at 697 (alterations in original) (quoting Alvarado-Valdez, 521 F.3d at 343). Accordingly, “[w]e cannot see how the government can conclusively show that the tainted evidence did not contribute to the conviction, because the government’s closing argument relied on that very evidence.” Alvarado-Valdez, 521 F.3d at 342-43.
Nevertheless, the Government now contends that even when A.L. and C.M.’s in-court identifications are removed from consideration, the evidence presented at trial was so overwhelming as to establish Shaffer’s guilt beyond a reasonable doubt. In support, the Government principally focuses on the following evidence: (1) Robinson’s testimony; (2) the surveillance video; and (3) the fingerprint found on the withdrawal slip.
*703 At trial, Robinson testified that he drove Shaffer to the Wal-Mart on the day of the robbery and that the sweater, sweatpants, and gun worn and used by the man in the surveillance video belonged to him. Robinson also identified the man in the surveillance video as Shaffer.
There is reason, however, to question portions of this testimony—especially the identity of the robber. As Shaffer’s counsel argued at trial, the robber arrived in Robinson’s ear, was wearing Robinson’s clothes, and was carrying Robinson’s gun. While Robinson told both the police and the jury that it was Shaffer and not him in the surveillance video, he plainly had an' incentive to do so. Taking Robinson’s testimony on its face would force us to accept the credibility of a paramount witness that we were unable to observe and whom the Government conceded may have participated in the crime. Given the outstanding questions about Robinson’s credibility, we cannot say that his testimony is overwhelming evidence that Shaffer was the robber. See Cueto, 611 F.2d at 1065 (noting credibility issues of witness in conducting harmless error review).
We also cannot accept the Government’s contention that the surveillance video provides overwhelming evidence that Shaffer is guilty. The video, although it includes the robber’s face, is of a grainy quality. The person in the video is also wearing a cap that casts a shadow over his face and obscures his facial features. Thus, we cannot determine with any certainty the surveillance video’s probative force.
Lastly, the Government’s fingerprint evidence does not persuade us that the tkint-ed in-court identifications were harmless beyond a reasonable doubt. Specifically, the Government points to the fact that the surveillance video shows the robber touching the demand note and that two fingerprint analysts testified at trial that a single fingertip print found on the demand note matched a single fingertip print from Shaffer. Yet the fingertip print—unlike the robber’s gun, clothes, or getaway car—is. the only physical evidence that does not also implicate Robinson. While fingerprint evidence by itself may be sufficient to support a jury’s guilty verdict, see Gibson v. Collins, 947 F.2d 780, 785 (5th Cir. 1991), where there is constitutional error, a guilty verdict may be affirmed only where “there was [no] reasonable possibility that the evidence complained of might have contributed to the conviction.” Alvarado-Valdez, 521 F.3d at 341 (alteration in original) (quoting Chapman, 386 U.S. at 24, 87 S.Ct. 824). Because of the heavy emphasis that the Government placed on the tainted in-court identifications and our doubts surrounding the strength of the Government’s other evidence, the single fingertip-print match does not persuade us beyond a reasonable doubt that the introduction of the tainted identification testimony was harmless error.
IV. CONCLUSION
For the foregoing reasons, we reverse Shaffer’s conviction and remand to the district court.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4,